**Bobby Joe LEWELLEN,**
**Plaintiff–Appellant,**

v.

**The METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE and The Metropolitan Board of Public Education, Defendants–Appellees.**

No. 93–5061.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 3, 1993.

Decided Aug. 25, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Oct. 12, 1994.

Gayle Malone, Jr. (argued and briefed), Trabue, Sturdivant & DeWitt, Nashville, TN, for plaintiff-appellant.

John L. Kennedy (briefed), Stephen Nunn (argued and briefed), Metro Legal Dept., Nashville, TN, for defendants-appellees.

Before: MERRITT, Chief Judge; and NELSON and BOGGS, Circuit Judges.

DAVID A. NELSON, Circuit Judge.

This is a civil rights case brought by a workman who was accidentally injured on a school construction project. Contending that the accident was a result of intentional or grossly negligent acts and omissions on the part of the defendant school board, and characterizing the board's conduct as "reckless and/or undertaken with deliberate indifference to plaintiff's personal safety," the plaintiff brought suit under 42 U.S.C. § 1983 against the board and the metropolitan government of which the board is an agency. The plaintiff's theory was that the defendants had deprived him of liberty and/or property without due process of law in violation of his "substantive" rights under the Fourteenth Amendment of the United States Constitution. (See *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986), explaining that the Due Process Clause bars "certain government actions regardless of the fairness of the procedures used to implement them;" this is the concept embodied in the phrase "substantive due process.")

The district court (Higgins, J.) granted summary judgment to the defendants. The court acknowledged the existence of a genuine dispute of fact as to whether the defendants had been negligent, but held as a matter of law—largely in reliance on the unanimous opinion of the Supreme Court in *Collins v. City of Harker Heights*, —— U.S. ——, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)—that no constitutional violation had occurred. We agree, and we shall affirm the judgment.

I

The plaintiff, Bobby Joe Lewellen, was employed as a carpenter by a company that held a contract to construct an elementary school building for the defendant board of education. The building was to be erected next to an existing structure that housed a middle school. A portion of the new building site lay directly beneath a 23,900–volt "open conductor" power line used to supply electricity to the existing school.

The architect's plans for the new building specified that the power line was to be moved in the course of construction. The construction contract provided that the general contractor or its electrical subcontractor would coordinate the move and would pay the local utility company for doing the work. It was anticipated that the relocation of the line would require an interruption of electrical service to the middle school for a period of six to eight hours.

At a pre-construction conference attended in the spring of 1988 by school officials, the general contractor, and others, it was recognized that the power line ought to be relocated before the middle school opened for classes in the fall. Unfortunately, however, the preliminary work necessary to effect the relocation was not completed until November 1, 1988.

The school board was unwilling to allow power to be shut off to the middle school while school was in session, and the utility company insisted on being paid the overtime costs that would be incurred in performing the changeover on a weekend or holiday. It was estimated that these costs would come to between $600 and $1,000. The school board, the contractor and the electrical subcontractor all denied responsibility for paying the additional overtime costs. Finally, on November 21, 1988, it was agreed that the changeover would be made on December 29, a weekday when school would not be in session because of Christmas vacation.

Construction of the new school building had been proceeding throughout the summer and fall of 1988, and the structural work was essentially complete by mid-December. When the framework of the new building was finished, the top of the building came within seven feet of the power line.

It is uncontested that the presence of the energized power line this close to the new building violated applicable safety and electrical code standards. The construction contract made the contractor responsible for safety precautions on the job, but the school board had a contractual right to order that work be stopped if the contractor persistently failed to comply with the terms of the contract. The board did not order a stop, and it had no internal procedure for monitoring any of its construction sites (some seven different schools were under construction at the time) for safety violations. The board relied on its architect to monitor safety conditions, and neither the board, the architect, the contractor, nor anyone else warned construction workers about the power line.

On December 19, 1988, while plaintiff Lewellen was at work on the roof of the new building, a piece of steel bridging he was carrying came into contact with the power line. Mr. Lewellen sustained a severe electrical shock that caused extensive third-degree burns. His lower right leg, the big toe of his left foot, both index fingers, and the ring finger of his right hand all had to be amputated, and he lost much of the use of his hands.

Mr. Lewellen brought suit against the board of education, the metropolitan government, and others in September of 1989. The claims against the non-governmental defendants were eventually settled, and these defendants were dismissed from the lawsuit in December of 1990. The governmental defendants moved for summary judgment the following May, and the matter was referred to a magistrate judge. Disposition of the summary judgment motion was stayed after the Supreme Court granted certiorari in *Collins v. Harker Heights.*

Once *Harker Heights* had been decided, and notwithstanding the Supreme Court's rejection of the § 1983 claim asserted there, the magistrate judge issued a report in the case at bar recommending that the defendants' summary judgment motion be denied. The district court rejected the recommendation and entered summary judgment for the defendants. This appeal followed.

## II

In 1871—six years after the end of the Civil War and three years after the ratification of the Fourteenth Amendment—Congress enacted the statute now codified as 42 U.S.C. § 1983.[1] The first sentence of § 1983 reads as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The "threshold requirement" of this statute, the Supreme Court has told us, relates to "whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). Unless a deprivation of some federal constitutional or statutory right has occurred, § 1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate.

---

1. The principal aims of the 1871 civil rights act have been described as follows: "(1) to override 'invidious legislation' by the states which impaired rights and privileges of citizens of the United States; (2) to provide a remedy for infringement of such rights and privileges where state law was inadequate; and (3) to provide a federal remedy where a state remedy was adequate in theory but not in actual practice." *Wilson v. Beebe,* 770 F.2d 578, 581 (6th Cir.1985) (en banc) (citing *Monroe v. Pape,* 365 U.S. 167, 173–74, 81 S.Ct. 473, 477, 5 L.Ed.2d 492 (1961)).

The source of the federal right on which plaintiff Lewellen bases his case against the defendants here is the language in § 1 of the Fourteenth Amendment declaring that "[no] State [shall] deprive any person of life, liberty, or property, without due process of law...." Mr. Lewellen did not lose his life in the accident, but his complaint alleges that he was deprived—without due process—of liberty, property, or both. His brief on appeal does not mention a property interest, but suggests that the accident deprived him of "a constitutionally guaranteed liberty interest ... in being free from bodily injury."

Historically, as the Supreme Court pointed out in *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986), the due process guarantee of the Fourteenth Amendment "has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." (Emphasis in original.) Our court made a similar observation in *Wilson v. Beebe*, where we held that § 1983 provided no redress for a man negligently shot by a police officer who was attempting to handcuff him:

> "We know of no case in which negligent conduct has been held to constitute a substantive due process violation of the type described in *Rochin v. California* [342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952)] and *Johnson v. Glick* [481 F.2d 1028 (2d Cir.), cert. denied, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)], and [we] conclude that a substantive due process violation of this kind does require an intentional act. The factors listed in *Johnson v. Glick* all relate to the purposeful infliction of injury." *Wilson v. Beebe*, 770 F.2d 578, 586 (6th Cir.1985) (en banc).

The Supreme Court has repeatedly noted, moreover, that the provision in Magna Carta from which our Due Process Clause stems was "intended to secure the individual from the arbitrary exercise of the powers of government." *Albright v. Oliver*, —— U.S. ——, ——, 114 S.Ct. 807, 812, 127 L.Ed.2d 114 (1994) (citations and internal quotes omitted).[2]

■ If the defendants in the case at bar had deliberately decided to inflict bodily injury on the plaintiff, the caselaw indicates that a constitutionally protected "liberty" interest would have been compromised. See *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), where the Supreme Court held that Fourteenth Amendment liberty interests were implicated when school authorities deliberately decided to punish schoolboys for misconduct by restraining the boys and paddling them, thereby "inflicting appreciable physical pain." *Id.* at 673–74, 97 S.Ct. at 1413–14. See also *Davidson v. Cannon*, 474 U.S. 344, 352, 106 S.Ct. 668, 672–73, 88 L.Ed.2d 677 (1986) (Blackmun, J., dissenting).

■ In the case at bar, however, the defendants obviously did not make a deliberate decision to inflict pain and bodily injury on the plaintiff. The defendants may have been negligent, but it is now firmly settled that injury caused by negligence does not constitute a "deprivation" of any constitutionally protected interest. See *Collins v. City of Harker Heights*, —— U.S. at ——, 112 S.Ct. at 1070; *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 201–02, 109 S.Ct. 998, 1006–07, 103 L.Ed.2d 249 (1989); *Daniels v. Williams*, 474 U.S. at 332, 106 S.Ct. at 665.[3]

■ Acknowledging that negligence will not suffice to trigger protection under the Due Process Clause, plaintiff Lewellen ar-

---

**2.** The first sentence of Chapter 29 of the fourth Great Charter, issued by Henry III in 1225, reads (in translation) as follows: "No freeman shall be taken or imprisoned, or disseised of his free tenement, liberties or free customs, or outlawed or exiled or in any wise destroyed, nor will we go upon him, nor will we send upon him, unless by the lawful judgment of his peers, or by the law of the land." Plucknett, *A Concise History of the Common Law* 24 (4th ed.1948).

**3.** The Court of Appeals for the Fourth Circuit, in the decision affirmed by the Supreme Court in *Daniels*, expressed the view that "negligent injury to the plaintiff's person is not a protectable liberty interest under the due process clause...." *Daniels v. Williams*, 748 F.2d 229, 232 (4th Cir.1984) (en banc). Whether it is the "liberty" interest that is missing in a negligent injury case or the "deprivation" of such an interest, the result is the same: No constitutional violation has occurred if the injury results from negligence.

gues that the defendants were guilty of more than negligence when they deliberately chose to build a school directly beneath a high-voltage conductor line, deliberately delayed the removal of the line, and willfully disregarded the very high risk thereby created. If negligence lies at one end of a spectrum and intent at the other (see *Daniels v. Williams,* 474 U.S. at 335, 106 S.Ct. at 667), the plaintiff suggests that the conduct of the defendants in this case was far enough away from negligence, and close enough to intentional infliction of bodily injury, to constitute a violation of the Constitution.

The Sixth Circuit decision that comes closest to supporting the plaintiff's contention is *Nishiyama v. Dickson County,* 814 F.2d 277 (6th Cir.1987) (en banc). In that case the plaintiffs' complaint alleged that a county prisoner—a dangerous felon who had assaulted a young woman in the past—had been given unsupervised use of the county sheriff's patrol cars. One night the prisoner began stopping motorists, pulling them over after activating the flashing blue lights on the patrol car he was driving. The sheriff's department was notified by officials in another county that one of the department's patrol cars was stopping motorists, but nothing was done about it. The prisoner finally pulled over a car driven by the plaintiffs' daughter, and the young woman was murdered. On these extraordinary facts, we concluded that the complaint stated a claim under § 1983 against the county and the responsible officials in the sheriff's department.

Like the complaint before us in the present case, the complaint in *Nishiyama* charged the defendants with "gross negligence." On the facts as stated, we concluded in *Nishiyama* that the allegation of gross negligence "was sufficient to charge [the defendants] with arbitrary use of government power" in violation of the Due Process Clause. *Id.* at 282. The test, we went on to say, was whether the defendant official "intentionally does something unreasonable with disregard to a known risk or a risk so obvious that he must be assumed to have been aware of it, and of a magnitude such that it is highly probable that harm will follow." *Id.* Referring to the defendants' "wanton disre-

gard" in ignoring the report which had alerted them to the fact that the dangerous convict for whom they were responsible was using their patrol car to stop motorists, and characterizing the defendants' conduct as "outrageous," we held that "such reckless indifference to the risk posed by their actions [was] sufficient to establish a violation of substantive due process under section 1983." *Id.* at 282–83.

■ The mere allegation of gross negligence—or the use in the pleadings of any other "vituperative epithet," for that matter—will avail the plaintiff nothing, of course, if the facts alleged are not sufficient to make out a constitutional violation. Thus in *Jones v. Sherrill,* 827 F.2d 1102 (6th Cir.1987), where we affirmed the dismissal of a § 1983 action brought by the widow of a man killed in an automobile accident that resulted from a police chase that reached speeds of 120–135 m.p.h., we noted that "[n]egligence does not become 'gross' just by saying so." *Id.* at 1106.

"The facts alleged in support of the legal conclusion of gross negligence must be sufficient to charge the government officials with outrageous conduct or arbitrary use of government power. The high speed pursuit alleged in Jones's complaint is not sufficient to state a claim under *Nishiyama.*" *Id.*

In *DeShaney v. Winnebago County Dep't of Social Services,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)—a case decided subsequent to both *Nishiyama* and *Jones*—the Supreme Court rejected a contention that after local government officials had undertaken to protect a helpless child from the known depredations of an abusive father who ultimately beat the child almost to death, it was an abuse of governmental power shocking to the conscience and violative of the Due Process Clause for the officials not to carry out their mission "in a reasonably competent fashion." *Id.* at 197–98, 109 S.Ct. at 1004–05. Accordingly, as we had occasion to observe in *Nobles v. Brown,* 985 F.2d 235, 238 n. 1 (6th Cir.1992), the test we applied in *Nishiyama* to determine whether the defendants' conduct was actionable under § 1983 "may not

have survived the Supreme Court's subsequent decision in *DeShaney.*"

Be that as it may, and regardless of whether the result we reached in *Nishiyama* could be justified under current Supreme Court doctrine, it seems clear that if *Nishiyama* had come before us after the Supreme Court issued its decision in *Collins v. Harker Heights,* we would have had to use a test other than the one we did use. *Nishiyama*'s test of a substantive due process violation, relying as it does on an explication of the standard for a particular type of "gross negligence," simply cannot be reconciled with what the Supreme Court said in *Harker Heights.*

The plaintiff in *Harker Heights* was the widow of a sanitation department worker (Larry Collins) who died of asphyxiation from sewer gas after he went down a manhole to work on a clogged sewer line. The hazard was known to the defendant city, because Mr. Collins' own supervisor had been rendered unconscious in a manhole a few months before Mr. Collins started work for the city. According to the complaint eventually filed by Mrs. Collins under § 1983, the city—following a policy of "deliberate indifference toward the safety of its employees"—never bothered to warn its people of the "known hazards" of working in sewer lines and manholes, and it did not teach them how to deal with these known hazards. — U.S. at — – —, 112 S.Ct. at 1063–64. The city acted "intentionally," the complaint further alleged, in failing to provide safety equipment and training required by a state statute. *Id.* Under the plaintiff's theory, the deliberate indifference attributed to the city was "arbitrary" and "shock[ing to] the conscience." *Id.* at —, 112 S.Ct. at 1069.

Sustaining a demurrer to the complaint, the district court dismissed the action pursuant to Rule 12(b)(6), Fed.R.Civ.P. The court of appeals, in an opinion reported at 916 F.2d 284 (5th Cir.1990), affirmed the dismissal. Without reaching the question of whether there had been a deprivation of a constitutional right, *id.* at 287, the court of appeals based its holding on the conclusion that the city, which was acting in its capacity as an employer rather than as a governing authority, had not been guilty of "an abuse of *governmental power.*" *Id.* at 286 (emphasis in original). The court viewed abuse of governmental power as a separate element of a § 1983 claim.

The result reached by the Fifth Circuit in *Harker Heights* was contrary to the result reached by the Eighth Circuit in a factually similar case, *Ruge v. City of Bellevue,* 892 F.2d 738 (8th Cir.1989). The Supreme Court granted certiorari in *Harker Heights* because of the conflict with *Ruge* and because of concern about the Fifth Circuit's interpretation of § 1983. — U.S. at —, 112 S.Ct. at 1065.

As to the latter concern, the Supreme Court rejected the notion that § 1983 requires "proof of an abuse of governmental power *separate and apart* from the proof of a constitutional violation." *Id.* (emphasis supplied). It would be absurd, the Court suggested, to suppose that while deliberate indifference to the safety of employees could not give rise to liability under § 1983, "equally deliberate indifference to the safety of pedestrians" could give rise to such liability if it "resulted in a fatal injury to one who inadvertently stepped into an open manhole...." *Id.*[4]

Whether or not the injured party is a governmental employee, *Harker Heights* teaches, the first question to be decided is whether the injury was caused by a constitutional violation. If that question is answered in the affirmative, the second question is whether the defendant is responsible for the violation. *Id.* at —, 112 S.Ct. at 1066. While "deliberate indifference" may have a bearing on how the second question is answered—the Court assumed, for purposes of decision, that deliberate indifference could provide a substitute for responsibility based

---

4. By indicating that persons not employed by the government are likewise precluded from recovering under § 1983 for injuries caused by the government's "deliberate indifference" to a known risk—at least if such persons have not already been deprived of their liberty by imprisonment or the like, *id.* at — – —, 112 S.Ct. at 1069–70—the Supreme Court's opinion restricted the sweep of § 1983 far more than the Fifth Circuit's opinion had done.

on a respondeat superior theory, *id.* at —, 112 S.Ct. at 1068—the Court squarely held, notwithstanding the complaint's allegation of "deliberate indifference," that there had been no constitutional violation and that the complaint thus did not state a claim on which relief could be granted under § 1983.

Noting that the Constitution does not guarantee a workplace free of "unreasonable" risk of harm, *id.* at —, 112 S.Ct. at 1070, pointing out that the allocation of financial resources involves policy choices that must be made by locally elected representatives, as opposed to federal judges, *id.*,[5] and rejecting Mrs. Collins' suggestion that the city's violation of the state safety statute supported her substantive due process claim, *id.*, the Supreme Court explicitly approved dismissal of Mrs. Collins' lawsuit. In so doing, the Court implicitly signaled disapproval of the "contrary decision" of the Eighth Circuit in *Ruge v. City of Bellevue*, 892 F.2d 738.

The record in the case at bar is more fully developed than that in *Harker Heights*, this case having been decided on a motion for summary judgment under Rule 56 and not on a motion to dismiss under Rule 12(b)(6). Examining the record in the light of *Harker Heights*, we find no basis at all for concluding that the defendants in this case committed a constitutional violation—and without a constitutional violation, as we have seen, there can be no recovery under § 1983.

■ It is true that the defendants acted intentionally in delaying the planned move of the power·line, but the *Harker Heights* defendants acted intentionally in sending Mr. Collins down the manhole without warning him of the known hazard from sewer gas and without providing him proper safety equipment. If the defendants in the present case were guilty of "deliberate indifference" to "unreasonable risks of harm," moreover, that was assumed to be the case in *Harker Heights* as well. What the defendants in this case clearly did *not* do was engage in arbitrary conduct intentionally designed to punish someone—*e.g.*, giving a worker "a partic-

ularly dangerous assignment in retaliation for a political speech . . . or because of his or her gender. . . ." — U.S. at —, 112 S.Ct. at 1065 (citations omitted). That kind of deliberate misconduct, *Harker Heights* suggests, may result in liability under § 1983. But the injuries suffered by plaintiff Lewellen, like the death of Mr. Collins, resulted from what at worst was gross negligence. Gross negligence is not actionable under § 1983, because it is not "arbitrary in the constitutional sense." *Id.* at —, 112 S.Ct. at 1071.

When all is said and done, this case, like *Harker Heights*, amounts to nothing more than a non-intentional tort case the facts of which give the plaintiff a strong claim on our sympathies. The Supreme Court has repeatedly declared its unwillingness to "make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the· States." See *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160–61, 47 L.Ed.2d 405 (1976); *Daniels v. Williams*, 474 U.S. at 332, 106 S.Ct. at 665–66; *Parratt v. Taylor*, 451 U.S. 527, 544, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981). The Supreme Court "has always been reluctant to expand the concept of substantive due process," guideposts in this uncharted area being "scarce and open-ended." *Harker Heights*, — U.S. at —, 112 S.Ct. at 1068. The Court has been particularly reluctant to hold that the highly elastic notion of substantive due process should be stretched to the point of "impos[ing] federal duties that are analogous to those traditionally imposed by state tort law." *Id.* at —, 112 S.Ct. at 1070 (citations omitted). What seems to be required is an intentional infliction of injury, as we suggested in *Wilson v. Beebe*, 770 F.2d at 586, or some other governmental action that is "arbitrary in the constitutional sense."

We agree with Judge Higgins that whatever the strength of plaintiff Lewellen's claim may be under Tennessee's law of non-intentional torts, Mr. Lewellen cannot show that a constitutional violation occurred in this case.

---

5. Thus it is not up to the courts to say in the case at bar that the defendant school board should have chosen to pay the extra $600—$1,000 nec-

essary to have the power line relocated on a weekend.

Accordingly, the judgment of the district court is **AFFIRMED.**