61 F.3d 904
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Chasidy THOMPSON, Plaintiff-Appellant,
v.
CITY OF NORTON, et al., Defendants-Appellees.
 No. 94-3246.
 United States Court of Appeals, Sixth Circuit.
 July 14, 1995.
 
 Before: MARTIN and RYAN, Circuit Judges; and GILMORE, District Judge.*
 PER CURIAM.
 
 
 1
 Chasidy Thompson appeals the district court's grant of summary judgment in favor of the City of Norton and three Norton police chiefs on her Section 1983, civil assault, and infliction of emotional distress claims. For the following reasons, we AFFIRM the decision of the district court.
 
 
 2
 On April 7, 1991, James Wright, a City of Norton police officer, induced the seventeen-year-old Thompson to enter his unmarked police car. Wright, who was on-duty at the time, proceeded to make unwanted sexual advances toward Thompson. Later that day, accompanied by her boyfriend Burton Gregory, Thompson reported the incident at the Norton Police Department. Both Thompson and Gregory claimed that while receiving the complaint against Wright, Sergeant Starr told them that the department had been aware of prior complaints of Wright's sexual misconduct for at least a year. Starr, however, denied making such a statement.
 
 
 3
 Starr relayed Thompson's complaint to Chief Walters, who began to investigate the incident. Wright was criminally prosecuted as a result, and he eventually pled guilty to charges of gross sexual imposition. He was suspended from the police department on April 15, 1991. Prior to his scheduled termination hearing, Wright resigned from the police force.
 
 
 4
 After this incident came to light, Jennifer Gordon, a Dairy Mart employee, told Thompson that Wright had also made unwanted sexual advances toward her. However, Gordon did not file a complaint about Wright's behavior or report the incident to the city, the police, or any other person in a position of authority until after learning of Thompson's assault.
 
 
 5
 During Wright's tenure as a police officer, Forest Diefendorff, Sr., John Van Hyning, and Thomas Walters each served as the City of Norton's Police Chief: Diefendorff was the chief who hired Wright; Van Hyning was acting chief from June 1, 1989, to December 13, 1989; and Walters became chief in December 1989 and held that position on the date of Thompson's assault.
 
 
 6
 Thompson filed an amended complaint in federal district court on July 21, 1992, against the City of Norton, Officer Wright, and Chiefs Diefendorff, Van Hyning, and Walters. In her complaint, she alleged violations of 42 U.S.C. Sec. 1983 and raised state law claims for civil assault and infliction of emotional distress. She filed a second amended complaint on November 18, adding that the defendants' actions violated her First, Ninth, and Fourteenth Amendment rights.
 
 
 7
 The City of Norton and Chiefs Diefendorff, Van Hyning, and Walters filed a summary judgment motion on February 2, 1993. The district court granted their motion on all counts in a June 3 Memorandum and Order. The court ruled that even assuming that Sergeant Starr made the statements Thompson and Gregory alleged, those statements did not create a genuine issue of material fact, absent evidence that they were based on Starr's personal knowledge and in the face of evidence that the police department thoroughly investigated the incident. The court also observed that Thompson's deposition merely reiterated her affidavit and offered no additional support for her claims concerning the department's knowledge of Wright's criminal propensities. Finally, the court reviewed Chief Van Hyning's deposition, concluding that his acknowledgment that he received complaints that Wright spent too much time at Dairy Mart and his admission that he was "not surprised" to learn of Wright's misconduct did not create a jury question as to whether the defendants knew of any past illegal sexual behavior on the part of Wright.
 
 
 8
 With the consent of the remaining parties, the district court subsequently transferred the matter to a magistrate judge, and the case against Wright proceeded to trial. On January 27, 1994, a jury returned a verdict in Thompson's favor and awarded her $5,000 in compensatory damages and $50,000 in punitives. This timely appeal followed.
 
 
 9
 We review a district court's grant of summary judgment de novo. Moore v. Holbrook, 2 F.3d 697, 698 (6th Cir.1993). Under Fed.R.Civ.P. 56(c), summary judgment is proper only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The Court views all of the evidence before it in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
 
 I. Section 1983 Claim
 
 10
 In order to succeed on a Section 1983 claim, a plaintiff must establish: " that [s]he was deprived of a right secured by the Constitution or laws of the United States, and that [s]he was subjected to or caused to be subjected to this deprivation by a person acting under color of state law." Searcy v. City of Dayton, 38 F.3d 282, 286 (6th Cir.1994) (citing Flagg Bros. v. Brooks, 436 U.S. 149, 155 (1978)). Although a municipality may be held liable under Section 1983 if the municipality itself caused the constitutional deprivation, a municipality does not incur Section 1983 liability for an injury inflicted solely by its agents or employees. Monell v. Department of Social Servs., 436 U.S. 658, 690, 691-95 (1978). Thus, a municipality is only liable when the injury is caused by the "execution of the government's policy or custom." City of Canton v. Harris, 489 U.S. 378, 385 (1989) (quotation omitted). Moreover, "only those municipal officials who have 'final policymaking authority' may by their actions subject the government to Section 1983 liability." City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1987).
 
 
 11
 Summary judgment in favor of the City of Norton was appropriate; Thompson failed to demonstrate that the city was "actually responsible" for Wright's acts. Id. (citation omitted). Assuming that Seargent Starr made the alleged statements concerning the department's knowledge, summary judgment was proper because Thompson did not show that Starr had the required "final policymaking authority" to subject the municipality to Section 1983 liability. That statement does not prove a final policymaker's state of mind; even assuming that the department was, at some level, aware of Wright's history of misconduct, that general awareness does not demonstrate that someone with "final policymaking authority" knew of that history. Moreover, we are unwilling to impute knowledge on the part of a final policymaker from Starr's claim that "the Department" was aware of Wright's history of improper behavior.
 
 
 12
 In order to hold a supervisory employee liable under Section 1983 for the constitutional torts of a subordinate, a plaintiff must show that the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it." Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir.), cert. denied, 469 U.S. 845 (1984). Thus, a supervisor's liability cannot be grounded solely upon his right to control employees. Leach v. Shelby County Sheriff, 891 F.2d 1241, 1246 (6th Cir.1989), cert. denied, 495 U.S. 932 (1990).
 
 
 13
 Thompson has not shown that Chiefs Diefendorff, Van Hyning, and Walters either encouraged or participated in Wright's misconduct. She presented no evidence that Diefendorff was aware of Wright's misconduct. While Van Hyning acknowledged that he had received a complaint that Wright was spending too much time at Dairy Mart and that he was "not surprised" by Wright's behavior, this evidence does not create a genuine issue of material fact as to whether Van Hyning knew of Wright's history of misconduct. Finally, we refuse to impute the requisite knowledge on the part of Walters, the chief on the date of Thompson's assault, from Sergeant Starr's vague statement about the department's awareness of Wright's misconduct.
 
 
 14
 II. Civil Assault and Emotional Distress Claims
 
 
 15
 Thompson also argues that the district court erred in granting the defendants' summary judgment motion with respect to her state civil assault claim. Although she concedes that the City of Norton is immune from civil assault liability, she maintains that Chiefs Diefendorff, Van Hyning, and Walters were individually liable for Wright's assault, arguing that they failed to discipline Wright after being put on notice of his inappropriate behavior. Thompson claims that their inaction constituted "cooperation in the wrong" that facilitated Wright's tortious conduct. Conwell v. Vorhees, 13 Ohio 523, 524 (1844). However, because we find that there is no genuine issue of material fact as to whether the police chiefs had knowledge of Wright's past misconduct, summary judgment is appropriate on this count as well.
 
 
 16
 Finally, Thompson claims that the district court erred in granting summary judgment for the defendants on her state law claim for infliction of emotional distress. She argues that by failing to discipline Wright after being put on notice of his inappropriate behavior, Chiefs Diefendorff, Van Hyning, and Walters caused her severe emotional distress. According to Thompson, their inaction was reckless, so as to defeat the immunity to which they are otherwise entitled. Ohio Rev.Code Ann Sec. 2744.03(A)(6)(b); Thompson v. NcNiell, 559 N.E.2d 705, 707-08 (Ohio 1990). Because we conclude that there is no genuine issue of material fact as to whether the police department had knowledge of Wright's misconduct, however, we must necessarily conclude that there is no genuine issue of material fact regarding their alleged recklessness.
 
 
 17
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 18
 RYAN, Circuit Judge, concurring in the judgment.
 
 
 19
 I agree with my colleagues that we should affirm the district court's grant of summary judgment for these defendants. However, because I reach that conclusion for different reasons, I am writing separately.
 
 
 20
 There are two separate categories of defendants in this appeal: the City of Norton, and the current and former chiefs of police. As to the City, the plaintiff, Ms. Thompson, is claiming municipality liability under 42 U.S.C. Sec. 1983. She has sued the chiefs in their individual capacities asserting "supervisory liability." To establish Sec. 1983 liability against the City, Thompson must show that the City deprived her of a federally protected right through the implementation of a "custom" or "policy." Monell v. Dep't of Social Servs. of the City of New York, 436 U.S. 658, 690-91 (1977). The Monell Court declared, however, that a municipality could not be held liable under a respondeat superior theory; rather, the municipality must have "caused" the deprivation of federal right through a wrongful act. Id. at 691.
 
 
 21
 Thompson asserts that the City "caused" her deprivation of rights when the chiefs, who she claims were "final policymakers," established a policy of indifference toward Officer Wright's propensity to sexually abuse women. The only evidence that Thompson has produced to show that the City had such a policy is Thompson and Gregory Burton's allegation concerning the statement made by Sergeant Starr. I would hold that as a matter of law, this alleged statement, even taken in the light most favorable to Thompson, is insufficient to demonstrate a custom or policy in the Norton Police Department.
 
 
 22
 To make out a claim of supervisory liability against the chiefs, Thompson must demonstrate that the chiefs committed acts with the intent to deprive Thompson of federally protected rights. This court has recently rejected past precedent that indicated gross negligence was sufficient for supervisory liability. Lewellen v. Metropolitan Government of Nashville, 34 F.3d 345 (6th Cir.1994). This court held that "[g]ross negligence is not actionable under Sec. 1983, because it is not 'arbitrary in the constitutional sense.' " Id. at 351 (quoting Collins v. City of Harker Heights, 112 S.Ct. 1061, 1071 (1992)). Again, the only evidence that Thompson relied upon to demonstrate the chiefs' liability was the alleged statement by Sergeant Starr. Even taken in the light most favorable to Thompson, at best this statement could support a finding of gross negligence. I would hold that, as a matter of law, Thompson failed to carry her burden to put forth evidence that the chiefs intended to deprive her of federally protected rights.
 
 
 23
 Because I conclude that Thompson has failed to carry her burden of proof, I do not reach the issue of whether the acts of Office Wright violated Thompson's constitutional rights or whether the chiefs were "final policymakers."
 
 
 
 *
 The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation