77 F.3d 482
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Bryan M. COLE; and Lori Cole Tate, Plaintiffs-Appellants,
v.
TUSCARAWAS COUNTY DEPARTMENT OF HUMAN SERVICES, formerly
known as Tuscarawas Welfare Department. Tuscarawas County,
Ohio; William Winters, Tuscarawas County Board of
Commissioners; Steven Smith, Tuscarawas County Board of
Commissioners; John Zion, Tuscarawas County Board of
Commissioners; John H. Laurer, Director Tuscarawas County
Department of Human Services; Gloria Digenova; and Anthony
Digenova, Defendants-Appellees.
 No. 94-4066.
 United States Court of Appeals, Sixth Circuit.
 Feb. 15, 1996.
 
 Before: BOGGS and NORRIS, Circuit Judges; HACKETT, District Judge.*
 OPINION
 PER CURIAM.
 
 
 1
 This lawsuit stems from a tragic accident that occurred nearly twenty years ago when plaintiff Bryan Cole was a child in foster care: he placed a live electrical cord in his mouth and suffered severe injuries. Bryan, who has now attained his majority, instituted this action in December 1993[1] against Gloria and Anthony DiGenova, his former foster parents, as well as the governmental entities and officials that administered the foster care program.
 
 
 2
 His complaint includes several state-law claims: breach of contract, negligence, and vicarious liability. The crux of this appeal, however, is Bryan's allegation that defendants subjected him to "cruel and unusual punishment and denied him his rights of privacy and liberty all in contravention of the Eighth, Ninth, and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983."
 
 
 3
 The district court dismissed the complaint in its entirety. The court found that, as a matter of law, the complaint failed to allege sufficient facts to sustain the constitutional claim. It then dismissed the state-law claims under the Colorado River doctrine[2] because plaintiffs had filed a nearly identical suit in state court.
 
 
 4
 We review de novo the district court's decision to dismiss a complaint as a matter of law. Taxpayers United for Assessment Cuts v. Austin, 994 F.2d 291, 296 (6th Cir.1993). Furthermore, the allegations of the complaint must be construed in a light most favorable to plaintiffs. Gazette v. City of Pontiac, 41 F.3d 1061, 1064 (6th Cir.1994). Unless it is clear that plaintiffs can prove no set of facts that would support their claim, dismissal is improper. Id.
 
 
 5
 The amended complaint contains the following allegations, which we accept as true for purposes of this appeal. On July 2, 1976, Lori Cole Tate signed an "agreement for care of child and temporary custody," which requested that defendant Tuscarawas County, [Ohio] Department of Welfare[3] "take care of" her four minor children, including Bryan who was fourteen months old at the time. Shortly thereafter Bryan was placed in the care of defendant foster parents, who "were already caring for six other children in a 3 bedroom residence." The same day that he was placed in the foster home, Bryan suffered the severe injuries mentioned earlier.
 
 
 6
 The complaint's § 1983 count is couched in these terms:
 
 
 7
 Defendants knew or should have known that an electrical cord plugged into a wall receptacle carrying live electrical current posed a substantial risk of harm to all unsupervised or improperly supervised juveniles of Plaintiff, BRYAN M. COLE's, tender years who tampered with said cord.
 
 
 8
 Defendants failed to propose, adopt, effectuate or enforce measures which were likely to reasonably assure the safety of said juvenile.
 
 
 9
 By continuously and routinely maintaining and operating the foster home of Gloria and Anthony DiGenova, under color of state law, in the manner previously described, Defendants, and each of them, established a pattern and practice of deliberate indifference and callous disregard of Plaintiff, BRYAN M. COLE's, safety to his constitutional and statutory rights.
 
 
 10
 Amended Complaint pp 21-23. In addition to these specific allegations, the civil rights count incorporated the state-law negligence count, which charged defendants with failure to secure the premises, ensure a reasonable ratio of adults to children, supervise the plaintiff, or develop an adequate training policy for county personnel.
 
 
 11
 To resolve this appeal, we must answer the following question: Was the alleged conduct of defendants sufficient to sustain a cause of action for the alleged constitutional deprivations? We think not.
 
 
 12
 A recent panel of this court summarized the extent to which allegations of negligence on the part of governmental actors can give rise to substantive due process claims under the Fourteenth Amendment. Lewellen v. Metropolitan Gov't of Nashville, 34 F.3d 345 (6th Cir.1994), cert. denied, 115 S.Ct. 903 (1995). In that case, which also stemmed from injuries suffered by plaintiff as the result of an electrical shock, this court explained the law in these terms:
 
 
 13
 Historically, as the Supreme Court pointed out in Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986), the due process guarantee of the Fourteenth Amendment "has been applied to deliberate decisions of government officials to deprive a person of life, liberty, or property." (Emphasis in original.) Our court made a similar observation in Wilson v. Beebe, where we held that § 1983 provided no redress for a man negligently shot by a police officer....
 
 
 14
 ....
 
 
 15
 In the case at bar ... the defendants obviously did not make a deliberate decision to inflict pain and bodily injury on the plaintiff. The defendants may have been negligent, but it is now firmly settled that injury caused by negligence does not constitute a "deprivation" of any constitutionally protected interest. See Collins v. City of Harker Heights, 503 U.S. at 115, 112 S.Ct. at 1070; DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 201-02, 109 S.Ct. 998, 1006-07, 103 L.Ed.2d 249 (1989); Daniels v. Williams, 474 U.S. at 332, 106 S.Ct. at 665.
 
 
 16
 Id. at 348. As this discussion makes abundantly clear, as a matter of law, allegations of mere negligence fail to state a due process violation.
 
 
 17
 If mere negligence is insufficient, what about claims of gross negligence? In Nishiyama v. Dickson County, Tennessee, 814 F.2d 277 (6th Cir.1987) (en banc), we held that reckless indifference could give rise to a substantive due process claim:
 
 
 18
 We acknowledge that the term "gross negligence" evades easy definition. In our view, a person may be said to act in such a way as to trigger a section 1983 claim if he intentionally does something unreasonable with disregard to a known risk or a risk so obvious that he must be assumed to have been aware of it, and of a magnitude such that it is highly probable that harm will follow....
 
 
 19
 ....
 
 
 20
 We hold that such reckless indifference to the risk posed by their actions is sufficient to establish a violation of substantive due process under section 1983.
 
 
 21
 Id. at 282-83. In our view, plaintiffs' substantive due process claim survives only if the allegations meet the test outlined in Nishiyama.[4] We conclude that, although the amended complaint invokes gross negligence, the factual allegations do not indicate that defendants "intentionally [did] something unreasonable with disregard to a known risk or a risk so obvious that [they] must be assumed to have been aware of it."
 
 
 22
 The other allegations, which essentially amount to a charge that defendants failed to supervise Bryan adequately, sound in ordinary negligence. While permitting a child to come across an electrical cord might constitute such negligence--a matter that we leave to the state court to resolve--it certainly does not evince an act that is so intentionally unreasonable that it sounds in gross negligence. "The mere allegation of gross negligence--or the use in the pleadings of any other 'vituperative epithet,' for that matter--will avail the plaintiff nothing, of course, if the facts alleged are not sufficient to make out a constitutional violation." Lewellen, 34 F.3d at 349. Accordingly, we affirm the decision of the district court dismissing plaintiffs' section 1983 count.
 
 
 23
 Finally, we turn to the state-law allegations. For the reasons articulated in the district court's order of dismissal, we now hold that this court should relinquish jurisdiction over those claims pursuant to the Colorado River doctrine.
 
 
 24
 For the foregoing reasons, the order of the district court dismissing this action is affirmed.
 
 
 
 *
 The Honorable Barbara K. Hackett, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 An amended complaint, filed later the same month, adds Bryan's mother, Lori Cole Tate, as a plaintiff
 
 
 [2]
 Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976)
 
 
 [3]
 The name of this agency has since been changed to Tuscarawas Department of Human Services
 
 
 [4]
 As Lewellen points out, there is some question whether the test applied in Nishiyama survived the Supreme Court's subsequent DeShaney decision. Lewellen, 34 F.3d at 349-50. We need not address that question here, however, because plaintiffs' amended complaint is inadequate under either analysis