**CHOATE'S AIR CONDITIONING & HEATING, INC., Plaintiff–Appellant,**

v.

**LIGHT, GAS AND WATER DIVISION OF THE CITY OF MEMPHIS; Memphis Cellular Telephone Company, a Tennessee general partnership; Powertel/Memphis Inc.; Herman Morris, Jr., individually and in his official capacity; Gte Mobilnet of Memphis Inc.; Gte Mobilnet of Memphis II, Inc., Defendants–Appellees.**

**No. 00–5399.**

United States Court of Appeals, Sixth Circuit.

June 22, 2001.

Before NORRIS and COLE, Circuit Judges; and STEEH, District Judge.*

OPINION

COLE, Circuit Judge.

Plaintiff–Appellant Choate's Air Conditioning and Heating, Inc. ("Choate's") appeals from the district court's order dismissing, for failure to state a cause of action, this § 1983 civil rights action alleging substantive due process violations stemming from an alleged easement-agreement violation by Defendants–Appellees Light, Gas and Water Division of the City of Memphis ("MLGW"); Memphis Cellular Telephone Company ("MCTC"); GTE Mobilnet of Memphis, Inc. ("Mobilnet"); GTE Mobilnet of Memphis II, Inc. ("Mobilnet II"); PowerTel/Memphis, Inc. ("PowerTel"); and Herman Morris, Jr. ("Morris"), individually and in his official capacity as General Counsel and President of MLGW.

At issue is whether MLGW violated the terms of its easement agreement with Choate's when it leased a portion of an easement to various private telecommunications companies for the purpose of building various cellular telephone antennas thereon. Choate's alleges that MLGW's behavior constituted a taking within the meaning of the Fifth Amendment's Just Compensation Clause and the Fourteenth Amendment's Due Process Clause. Because, however, MLGW's actions were for a private use, Choate's argues that it need not have availed itself of state postdeprivation remedies before filing the instant lawsuit in federal court. Choate's further

* The Honorable George Caram Steeh, III, United States District Judge for the Eastern District of Michigan, sitting by designation.

contends that where a plaintiff has been the subject of an uncompensated taking, as in the instant case, and where a plaintiff has no right to just compensation because the taking was for a private use, such behavior should be found to constitute a substantive due process violation for which a § 1983 action may be brought.

The district court rejected Choate's substantive due process argument (and a related civil conspiracy claim, also brought pursuant to 42 U.S.C. § 1983) and granted Defendants' motion to dismiss on that point. Finding no further basis on which to exercise subject-matter jurisdiction over the remaining state-law claims, the district court dismissed the entire action. Because Choate's failed to set forth a cognizable substantive due process violation and because Choate's remedy, if one exists at all, is in state court, the district court properly dismissed Choate's action. Accordingly, we AFFIRM the district court's order.

## I. BACKGROUND

### A. Factual Background

In 1948, a 500,000–gallon water storage tank elevated on a 140–foot tower ("Choate's Water Tower") was constructed on a 2.442–acre tract in western Shelby County. The Memphis Suburban Utility District of Shelby County conveyed the tract and the water storage tank to MLGW by warranty deed in 1957 for the use and benefit of MLGW. MLGW is a division of the municipality of Memphis that provides water, electricity, natural and artificial gas, and other forms of energy to Shelby County residents. In 1990, MLGW conveyed by special warranty deed ("the 1990 Deed") the tract and water storage tank to Choate's, but reserved for itself an easement on a 0.441–acre portion of the conveyed property containing the water storage tank. Pursuant to the 1990 Deed, MLGW retained, *inter alia*, the following rights:

... a perpetual easement or Right–Of–Way to construct, maintain and operate an elevated water storage tank; one, or more, Electric transmission or distribution line or lines, consisting of a variable number of wires and all necessary or desirable appurtenances (including but not limited to regulating, transmission and distribution equipment and necessary housing therefor; towers or poles made of wood, metal or other materials, telephone and telegraph wires, props, guys and anchorages, etc.); ... over, across, upon and under [the easement area] ....

Within the hereinabove described easement area, the City of Memphis, acting through the Memphis Light, Gas and Water Division, reserves unto itself, its successors and assigns the right to maintain absolute control of the access to and occupancy and use of said easement area. It being expressly understood that no one, including the fee simple property owner, his successors, heirs and assigns, shall be allowed access to and the occupancy and use of any portion of the hereinabove described easement area without prior written authorization for the same from the City of Memphis, acting through the Memphis Light, Gas and Water Division, which authorization may be granted or denied at the sole discretion of the City of Memphis, acting through the Memphis Light, Gas and Water Division.

On June 14, 1995, MLGW entered into an "Antenna Site License Agreement" ("the Agreement") with MCTC, under which MCTC, as licensee, was permitted to install, operate, and maintain telecommunications equipment on the easement area and was allowed access to the easement area to perform such functions. Consistent with the terms of the Agreement, MCTC constructed a building to house its telecommunications equipment

and installed telecommunications antennas on Choate's Water Tower. MCTC continues to operate and maintain telecommunications equipment on the easement area. MLGW entered into a similar licensing agreement with PowerTel in 1996, pursuant to which PowerTel subsequently constructed telecommunications equipment on Choate's Water Tower. At issue is whether MLGW violated the 1990 Deed by entering into these licensing agreements and whether this alleged violation constituted an uncompensated taking of Choate's property for a private use for which Choate's may seek relief in federal court.

### B. Procedural History

Choate's initiated the instant lawsuit on July 19, 1999, when it filed a complaint in the United States District Court for the Western District of Tennessee. The complaint set forth a claim pursuant to 42 U.S.C. § 1983 and averred that Defendants acted under color of state law to deprive Choate's of its property rights and liberty interests, as protected by the Fifth and Fourteenth Amendments. Specifically, Choate's alleged that MLGW exceeded its rights under the 1990 Deed by entering into the aforementioned licensing agreements with MCTC and PowerTel; that said agreements were not authorized by the 1990 Deed, the Memphis City Charter, or the laws of the State of Tennessee; and that the telecommunications facilities built by MCTC and PowerTel substantially burdened Choate's property. Choate's complaint set forth (1) substantive due process violations under 42 U.S.C. § 1983; (2) a claim of civil conspiracy, in violation of 42 U.S.C. § 1985; and (3) state-law claims of slander of title and trespass, and sought a declaratory judgment establishing the rights of the parties with respect to the property and a preliminary injunction to preserve the status quo. Choate's amended its complaint on August 25, 1999, to name defendant Herman Morris, Jr., General Counsel and President of MLGW, as a defendant in his individual and official capacities; to eliminate its § 1985 civil conspiracy claim; and to set forth a civil conspiracy claim under 42 U.S.C. § 1983.

Each defendant filed a motion to dismiss both Choate's original complaint and its amended complaint, to which Choate's responded on November 1, 1999. On September 14, 1999, Choate's filed a motion for a temporary restraining order and a preliminary injunction against PowerTel, alleging destruction of its property by PowerTel's removal of its telecommunications equipment. The district court granted Choate's motion on September 16, 1999, entered a consent order, and extended the temporary restraining order to all named defendants.

MCTC, Mobilnet, and Mobilnet II filed cross-claims against MLGW on January 7, 2000, alleging MLGW's breach of their respective licensing agreements (for MLGW's alleged misrepresentation that it held exclusive ownership of the easement area) and seeking indemnification, costs, and expenses associated with this lawsuit. The district court never reached these cross-claims, however, because it granted Defendants' motions to dismiss on February 18, 2000, and entered a judgment dismissing Choate's amended complaint. Choate's timely appeal of that dismissal followed.

### II. DISCUSSION

#### A. Standard of Review

We review de novo a district court's dismissal of a complaint pursuant to FED. R. CIV. P. 12(b)(6). *See Soper ex rel. Soper v. Hoben,* 195 F.3d 845, 850 (6th Cir.1999) (citing *Wright v. MetroHealth Med. Ctr.,* 58 F.3d 1130, 1138 (6th Cir. 1995)). In evaluating a motion to dismiss for failure to state a claim, we construe the

complaint in the light most favorable to the plaintiff, *see Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1039–40 (6th Cir.1991), accepting as true all factual allegations contained in the complaint and determining "whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief," *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.1993). We are not, however, bound to accept as true unwarranted factual inferences, *see Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987), or legal conclusions unsupported by well-pleaded facts, *see Teagardener v. Republic–Franklin Inc. Pension Plan*, 909 F.2d 947, 950 (6th Cir.1990). A determination that a complaint was filed within the applicable statute of limitations is a conclusion of law that we review de novo. *See Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 938 (6th Cir.1999).

### B. Analysis

#### 1. Statute of Limitations

Under Tennessee law, "[c]ivil actions for compensatory or punitive damages, or both, brought under the federal civil rights statutes" must be commenced "within one (1) year after the cause of action accrued." TENN. CODE ANN. § 28–104(a)(3) (2000). Defendants argue that even assuming Choate's were able to set forth a cognizable § 1983 claim, it would nevertheless be barred by the Tennessee statute of limitations, because it did not file its complaint until July 19, 1999, more than a year after MLGW's 1995 agreement with MCTC and its 1996 agreement with PowerTel. *See Sevier v. Turner*, 742 F.2d 262, 272–73 (6th Cir.1984). Choate's responds that Defendants' statute-of-limitations argument is without merit because: (1) the ongoing nature of the 1990 Deed and the licensing agreements created continuing civil rights violations, and (2) periodic events that constituted separate acts gave rise to new and discrete violations within the statute-of-limitations period.

This Court conducts a three-part inquiry for determining whether a continuing violation exists, looking first to whether the defendant's wrongful behavior continued after the precipitating event; then to whether the plaintiff's injury continued to accrue after that event; and finally, to whether further injury to the plaintiff could have been avoided if the defendant had ceased its wrongful conduct. *See Tolbert*, 172 F.3d at 940. We note, however, that "[a] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Id.* (quoting *Nat'l Adver. Co. v. City of Raleigh*, 947 F.2d 1158, 1166 (4th Cir.1991)).

While we are reluctant to probe the record on a motion to dismiss to resolve this question, we find that even a cursory review of the facts of the instant case (as pleaded in Choate's complaint) convinces us that Choate's has the better of the argument. It is true that the harm of which Choate's complains was allegedly precipitated by MLGW's leasing of the easement area to various telecommunications companies. It appears, however, that the alleged harm continued to accrue after this point, as MLGW continued to enter licensing agreements, collect payments under those agreements, and update and service the relevant contracts, all of which activity occurred in relation to the disputed property in this case. We therefore decline to dismiss Choate's claim on this basis.

#### 2. Section 1983

Section 1983 is not itself a source of substantive rights, but rather provides a right of action for the vindication of independent constitutional guarantees. *See Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir.1990). A § 1983

action is supplemental to a state tort action arising out of the same factual circumstances. *See id.* at 224. In the context of an alleged due process violation, however, a plaintiff may resort to a § 1983 action for relief only where he can demonstrate that the constitutional right was not adequately vindicated by state-law postdeprivation remedies. *See Parratt v. Taylor,* 451 U.S. 527, 543–44, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (noting that a § 1983 action unavailable for deprivation of property without procedural due process where there exists a state remedy that comports with due process), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *see also Wilson v. Beebe,* 770 F.2d 578 (6th Cir.1985) (*en banc*) (extending *Parratt* to deprivations of liberty). To state a claim under 42 U .S.C. § 1983, a plaintiff must establish both that the defendant acted under color of state law, and that the defendant deprived him of a federal statutory or constitutional right. *See United of Omaha Life Ins. Co. v. Solomon,* 960 F.2d 31, 33 (6th Cir.1992).

We turn first to the question of whether Defendants deprived Choate's of a federal statutory or constitutional right. Although Choate's argues that Defendants' actions violated its federal constitutional right of substantive due process, it faces a heavy burden in establishing a substantive due process claim under the facts of this case. As we observed in *Lewellen v. Metropolitan Government of Nashville and Davidson County, Tennessee,* 34 F.3d 345 (6th Cir.1994):

> The Supreme Court "has always been reluctant to expand the concept of substantive due process, guideposts in this uncharted area being scarce and open-ended. The Court has been particularly reluctant to hold that the highly elastic notion of substantive due process should be stretched to the point of impos[ing] federal duties that are analogous to

> those traditionally imposed by state tort law."

*Id.* at 351 (alteration in original) (citations and internal quotation marks omitted). Thus, substantive due process protections have typically been limited to matters relating to family, marriage, procreation, and the right to bodily integrity, none of which is at issue here. *See Albright v. Oliver,* 510 U.S. 266, 272, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). In the context of § 1983 actions, two substantive due process strains have emerged: state action that so "shocks the conscience" as to amount to a violation of one's federal civil rights, and state action that has deprived an individual of a particular constitutional guarantee. *See Valot v. Southeast Local Sch. Dist. Bd. of Educ.,* 107 F.3d 1220, 1228 (6th Cir.1997). Choate's can prevail under neither theory, and thus, we decline to consider the second question of whether Defendants acted under color of state law.

### a. "Shocks the Conscience"

 Actions that "shock the conscience" are those that government officials may not take "no matter what procedural protections accompany them." *Beebe,* 770 F.2d at 586. While we have questioned the continued vitality of this strand of substantive due process jurisprudence, we nevertheless continue to recognize it in the exclusive context of cases involving physical abuse. *See Braley,* 906 F.2d at 225. Perhaps recognizing that its complaint sets forth no claim of physical abuse, Choate's now argues that the district court erred by evaluating its claim under the "shocks the conscience" approach and suggests that the court should have determined whether its complaint alleged sufficient facts demonstrating that Defendants' behavior was "arbitrary, capricious and abusive." Choate's cites no authority, however, for the proposition that the "arbitrary, capricious, and abu-

sive" standard is a cognizable standard appropriate for application to the facts presented in this case, and we have found none. We also note that Choate's never uses the terms "arbitrary" or "capricious" anywhere in either its complaint or its amended complaint. Inasmuch as Choate's urges use of this standard, we will assume that it is actually referring to the "arbitrary in the constitutional sense" standard, a variation of the "shocks the conscience" test that has been used exclusively in the zoning context "to emphasize the degree of arbitrariness required to set aside a zoning decision by a local authority." *Pearson v. City of Grand Blanc,* 961 F.2d 1211, 1222 (6th Cir.1992).

Even were we to apply this standard, however, Choate's still could not prevail. That Choate's alleges that Defendants acted in an arbitrary and capricious manner does not, without more, make it so. Nor does it lessen in any way its burden to support its claims with well-pleaded facts to survive a motion to dismiss. *See Teagardener,* 909 F.2d at 950 (noting that we are under no obligation to accept factually unsupported legal conclusions). As one judge of this Court observed in *Valot,* "merely to state that the Due Process Clause was 'intended to secure the individual from the arbitrary exercise of the powers of government,' which may be freely conceded, does nothing to state a claim under the substantive component of the Due Process Clause." 107 F.3d at 1233 (Ryan, J., concurring). Choate's argument is particularly unpersuasive given the sweeping language of the 1990 Deed delineating MLGW's rights under the easement agreement and extending broad discretion to MLGW to determine the use of the easement area. *See* J.A. at 35 ("Within [the easement area], the City of Memphis ... reserves unto itself ... the right to maintain *absolute control of the access to and occupancy and use of said easement."* (emphasis added)). We cannot conclude,

therefore, that Choate's complaint has set forth sufficient facts, which if proven, would demonstrate that Defendants' actions were arbitrary in the constitutional sense or that they otherwise shocked the conscience.

### b. Deprivation of a Federal Right

 Choate's, then, is left to argue that Defendants' actions deprived it of a particular constitutional protection. *See Valot,* 107 F.3d at 1228. This it has failed to do. Its complaint states only: "Choate's possesses rights of ownership and use of Choate's Property.... [which] are guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution" and that "[a]s a direct and proximate result of the acts of the Defendants, [Choate's] was deprived of its Substantive Due Process rights guaranteed by the Fourteenth Amendment of the United States Constitution." Choate's has merely repackaged a takings claim as a substantive due process violation for purposes of filing a § 1983 action in federal court. It is clear that although Choate's makes reference to the Fifth and Fourteenth Amendments in its complaints, it has failed to set forth any constitutional basis for the asserted substantive due process violation that is not explicitly contemplated by a specific constitutional provision. *See Albright v. Oliver,* 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." (internal quotation marks omitted)). Indeed, the Fifth Amendment's Just Compensation Clause governs the precise claim set forth by Choate's:

The Fifth Amendment does not proscribe the taking of property; it pro-

scribes taking without just compensation. Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a "reasonable, certain and adequate provision for obtaining compensation" exist at the time of the taking. If the government has provided an adequate process for obtaining compensation, and if resort to that process "yield[s] just compensation," then the property owner "has no claim against the Government" for a taking.... Similarly, if a state provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.

*Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194–95, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985) (alteration in original) (citations omitted).

Choate's allegations amount to nothing more than a just compensation takings claim for which it may seek state postdeprivation remedies; its effort to analogize this case to the zoning context and argue that it has an arbitrary and capricious substantive due process claim is unavailing. *See Pearson*, 961 F.2d at 1215 (distinguishing between "a just compensation takings claim" and "an arbitrary and capricious substantive due process claim"). Tennessee law provides the appropriate remedy for a plaintiff alleging a takings claim. A plaintiff may petition for a statutorily provided jury inquest, also known as an inverse condemnation action, or may sue for damages in a trespass action. *See* TENN. CODE ANN. § 29–16–123(a); *Meighan v. U.S. Sprint Communications Co.*, 924 S.W.2d 632, 640–41 (Tenn.1996). Choate's cannot allege a constitutional violation until, at a minimum, it first attempts to avail itself of these remedies:

When the government condemns property for public use, it provides the landowner a forum for seeking just compensation, as is required by the Constitution. If the condemnation proceedings do not, in fact, deny the landowner just compensation, the government's actions are neither unconstitutional nor unlawful. Even when the government takes property without initiating condemnation proceedings, there is no constitutional violation unless or until the state fails to provide an adequate postdeprivation remedy for the property loss.

*City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 714–15, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999) (citations and internal quotation marks omitted).

We are unconvinced by Choate's argument that any state remedies would be unavailable because Defendants' actions did not constitute a valid exercise of eminent domain power. Central to this argument is the premise that since Defendants did not effect a taking of its land for a *public* purpose, Choate's is not entitled to just compensation by resort to a state postdeprivation proceeding. *See Montgomery v. Carter County, Tenn.*, 226 F.3d 758, 765 (6th Cir.2000) (defining a private-use taking as one where there is "no rational relationship to some 'conceivable purpose'"). Choate's suggests that because "a 'private taking' (a taking for a private purpose) cannot be constitutional even if compensated, a plaintiff alleging such a taking would *not* need to seek compensation in state proceedings before filing a federal takings claim." Choate's argument fails, however, because the assumption underlying it—that the alleged governmental taking in this case was for a private use—is unsupported by the record. On the facts pleaded in Choate's complaint, we are not persuaded that this is one of

the "rare real-life example[s]" of a private-use taking, because Choate's has failed to plead facts demonstrating "that [the alleged taking] had no rational connection to a minimally plausible conception of the public interest." *Montgomery,* 226 F.3d at 768.

Quite the contrary, MLGW licensed various telecommunications companies to use part of an easement to operate and maintain telecommunications facilities for public use. More persuasive is the fact that the Tennessee legislature has recognized the public role of telecommunications companies and has gone so far as to extend eminent domain power to them. *See* TENN. CODE ANN. §§ 65–21–203, 65–21–204. Thus, even if MLGW and the private defendants instituted a taking of Choate's property, they were empowered to do so. *See id.* (noting that telephone companies may take private property "for works of internal improvement").

▆ Choate's failed to seek first in state court any available postdeprivation remedies. It cannot now come to federal court to allege a constitutional violation stemming from the same set of facts, particularly where it can use the Fifth Amendment's just compensation authority (as incorporated by the Fourteenth Amendment) to vindicate that right in state court. Choate's failure to set forth in its complaint facts that would support a claim that Defendants deprived it of a federal constitutional guarantee compels us to AFFIRM the district court's dismissal of Choate's due process claim.

### 3. Choate's Remaining Claims

▆ Choate's complaint also sets forth a § 1983 claim, which avers that Defendants engaged in a civil conspiracy to deprive it of its constitutionally protected rights. The district court properly dismissed this claim, as it, like the substantive due process claim, failed to allege an independent federal statutory or constitutional violation. The district court also properly concluded that, in light of its dismissal of Choate's § 1983 claims, it lacked subject-matter jurisdiction over Choate's case and refused to consider both Choate's pendent state-law claims and its claim for declaratory relief, which, in the absence of any federal jurisdictional basis, was itself a state-law claim. *See Musson Theatrical, Inc. v. Fed. Express Corp.,* 89 F.3d 1244, 1255 (6th Cir.1996) (noting that, absent "unusual circumstances," there is a strong presumption in favor of dismissing pendent state-law claims after a 12(b)(6) dismissal). Similarly, the district court's dismissal of Choate's claims against Morris was proper, as Choate's failure to state a constitutional violation made unnecessary any determination of whether Morris was subject to qualified immunity, as he asserted. *See Mattox v. City of Forest Park,* 183 F.3d 515, 520 (6th Cir.1999). Finally, the district court had no reason to address the pending cross-claims, because such claims sought indemnification and costs only in the event of a recovery by Choate's. We find no error, therefore, in the district court's dismissal of any of Choate's claims.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.