**Troy M. POPE, Jr., Plaintiff,**

v.

**TROTWOOD–MADISON CITY SCHOOL DISTRICT BOARD OF ED-UCATION, et al., Defendants.**

**No. C–3–99–441.**

United States District Court,
S.D. Ohio,
Western Division.

Nov. 29, 2000.

---

David Michael Deutsch, David M. Deutsch, LPA, Dayton, OH, for plaintiff.

Nicholas Edward Subashi, David James Arens, Law office of Nicholas E. Subashi, Dayton, OH, for Trotwood–Madison City School Dist. Bd. of Educ., Samuel C. Brewer, John Smith, Ann Hagler, Nancy Schaefer, Tina Davis, Joe Whitt, John McKinney, defendants.

DECISION AND ENTRY SUSTAINING DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS (DOC. # 18), INSOFAR AS SAID MOTION IS DIRECTED TOWARD COUNT VI OF PLAINTIFF'S COMPLAINT; STATE–LAW CLAIMS CONTAINED IN COUNTS I, II, III, IV, V, VII, VIII, IX AND X OF PLAINTIFF'S COMPLAINT DISMISSED, WITHOUT PREJUDICE TO REFILING IN STATE COURT OF COMPETENT JURISDICTION; JUDGMENT TO BE ENTERED IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFF ON COUNT VI OF PLAINTIFF'S COMPLAINT; TERMINATION ENTRY

RICE, Chief Judge.

This litigation stems from the accidental death of eighth-grade student Lamar Pope, who hit his head on a wall and broke his neck while playing basketball at Trotwood–Madison Middle School. Following Lamar Pope's death, Plaintiff Troy M. Pope, Jr. (hereinafter "the Plaintiff"), commenced the present action as Administrator of the decedent's estate.[1] (Complaint, attached to Notice of Removal, Doc. # 1 at Exh. A). The sole federal claim in the Plaintiff's Complaint is Count VI, which arises under 42 U.S.C. § 1983. The Complaint contains nine other Counts, all raising state-law claims. The Defendants are (1) the Trotwood–Madison City School District Board of Education, (2) Samuel C. Brewer, in his official capacity as Superintendent of the Trotwood–Madison City School District, (3) John Smith, in his official capacity as a member of the Trotwood–Madison Board of Education, (4) Ann Haigler,[2] in her official capacity as a member of the Trotwood–Madison Board of Education, (5) Nancy Schaeffer, in her official capacity as a member of the Trotwood–Madison Board of Education, (6) Tina Davis, in her official capacity as a member of the Trotwood–Madison Board of Education, (7) Joe Whitt, in his official capacity as a member of the Trotwood–Madison Board of Education, and (8) John McKinney, who has been sued both individually and in his official capacity as the boys' basketball coach at Trotwood–Madison Middle School. (Id.). Pending before the Court is a Motion to Dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), filed by the Defendants.

1. The Plaintiff filed his lawsuit in the Common Pleas Court of Montgomery County, Ohio, on August 12, 1999. The Defendants removed the action to this Court on September 8, 1999, on the basis of federal-question jurisdiction. (Doc. # 1).

2. The Plaintiff's Complaint incorrectly identifies Haigler as "Hagler."

## I. *Factual Background* [3]

On October 28, 1997, Lamar Pope attended an "open gym" session at Trotwood–Madison Middle School, along with approximately eighty other students. (Doc. # 1 at Exh. A, ¶ 8–10). The session, which was held in the school gymnasium after regular school hours, constituted part of the tryout process for membership on the school's seventh and eighth grade boys' basketball teams. (*Id.* at ¶ 11). Defendant John McKinney supervised the open gym session and evaluated the skills of the participating students. (*Id.* at ¶ 11–12).

During the session, McKinney conducted two simultaneous basketball games on "short courts," which ran the width of the full-sized basketball court. The end-lines on these short courts were five feet from the gymnasium wall. (*Id.* at ¶ 14). According to the American Institute of Architects, the distance between the end line and the gymnasium wall on an 84 foot basketball court should be at least ten feet.[4] (*Id.* at ¶ 15).

In any event, the two simultaneous games conducted by McKinney consisted of two five-man teams per game. (*Id.* at ¶ 16). McKinney actually participated in one of the two games, along with Pope. (*Id.* at ¶ 17). As he ran toward another player, Pope tripped and stumbled over the end-line, hitting his head on the gymnasium wall. (*Id.* at ¶ 18–19). The collision fractured his C 1 and C 2 vertebrae. (*Id.* at ¶ 21). Pope struggled to breathe and could not speak as he remained on the floor, bleeding from the mouth or chin.

(*Id.* at ¶ 23–24). Following the accident, an unidentified student lifted Pope from the floor and then placed him back down. (*Id.* at 22). McKinney then left the gymnasium and called the Trotwood Police Department. (*Id.* at ¶ 25). Neither McKinney nor anyone else attempted to administer "first aid" to Pope prior to the arrival of a Trotwood rescue squad, which consisted of emergency medical technicians and a paramedic. (*Id.* at ¶ 26–27).

When the rescue squad arrived, Pope had been without oxygen for approximately seven to seven and one-half minutes. (*Id.* at ¶ 31). He was prone on the floor, unattended, not breathing and without a pulse. (*Id.* at ¶ 29, 30). Although squad members performed cardiopulmonary resuscitation and restored Pope's pulse, he never regained the ability to breathe without artificial ventilation. (*Id.* at ¶ 32–34). Pope remained on a life-support system from October 28, 1997, until March 4, 1998, when the system was disconnected and he died. (*Id.* at ¶ 35, 37).

## II. *Analysis*

The Defendants' pending Rule 12(b)(6) Motion to Dismiss tests the legal sufficiency of the Plaintiff's Complaint. When ruling upon such a Motion, the Court must accept as true all factual allegations contained in the Complaint, and any ambiguities must be resolved in the Plaintiff's favor. The Court may grant the pending Motion to Dismiss only if no set of facts could be proven, consistent with the allegations contained in the Complaint, which would allow the Plaintiff to recover. *See Hishon v. King & Spalding*, 467 U.S. 69,

---

3. For purposes of ruling on the pending Motion to Dismiss, the Court will accept as true all factual allegations contained in the Plaintiff's Complaint.

4. Although the Plaintiff's Complaint is not entirely clear on this point, it appears that an

84–foot court is a full-sized middle school basketball court and that the "short courts" used on October 28, 1997, were somewhat smaller, given that they only ran the width of the full-sized court.

73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Carter by Carter v. Cornwell*, 983 F.2d 52, 54 (6th Cir.1993).

With the foregoing standards in mind, the Court turns first to Count VI, the only federal-law cause of action in the Plaintiff's Complaint. Count VI sets forth a claim arising under 42 U.S.C. § 1983, which provides that one who, under color of state law, deprives another of the "rights, privileges, or immunities secured by the Constitution and laws, shall be liable" for damages. The threshold inquiry under § 1983 is " 'whether the plaintiff has been deprived of a right secured by the Constitution and laws' " of the United States. *Lillard v. Shelby County Board of Education*, 76 F.3d 716, 724 (1996) (quoting *Baker v. McCollan*, 443 U.S. 137, 140, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)).

In the present case, the Plaintiff's Complaint alleges a violation of Lamar Pope's Fourteenth Amendment substantive due process rights. In particular, Count VI is premised on an alleged violation of Pope's constitutionally protected interest in his personal bodily integrity. (Doc. # 1 at Exh. A, ¶ 77–78). The Plaintiff alleges that the Defendants deprived Pope of his bodily integrity by failing to "take adequate precautions to ensure the safety of the student athletes." (*Id.* at ¶ 79). The Plaintiff also alleges (1) that the harm to Pope was "foreseeable" and "fairly direct," (2) that a "relationship" existed between Pope and "the state," and (3) that the Defendants created an opportunity for harm that otherwise would not have existed but for the act of having students play basketball on a "short court." (*Id.* at ¶ 81–

84). According to the Plaintiff, the Defendants "knew or should have known that the practice of allowing (80) eighty boys to try-out for the basketball team on courts that did not provide adequate distance from the base line to the wall, and the coach's active participation in the game instead of supervising[,] could have resulted in injury" to Pope. (*Id.* at ¶ 85).

In addition to his argument regarding the unsafe playing conditions, the Plaintiff raises several other issues in connection with his § 1983 claim. *First*, he contends that the Defendants deprived Pope of prompt medical attention because McKinney lacked CPR training, as required by Ohio law. (*Id.* at ¶ 41, 87). *Second*, he alleges that the Defendants acted in "willful disregard" of Pope's safety because the October 28, 1997, open gym session was held approximately two weeks earlier than allowed by Ohio law. (*Id.* at ¶ 53, 88). *Third*, he contends that McKinney disregarded Pope's safety by participating in the basketball games, rather than supervising them (*Id.* at ¶ 88). Based upon the foregoing allegations, the Plaintiff contends that the Defendants acted in "willful disregard" of Pope's safety and that they exhibited a "gross abuse of discretion" with a "lack of good faith." (*Id.* at ¶ 82, 85). He also asserts that the Defendants acted with "reckless" and "callous" indifference and that their actions "exceed[ed] the boundaries of a negligence claim...." [5] (*Id.* at ¶ 86, 89).

 Upon review, the Court concludes that the Plaintiff's allegations fail to state a viable claim for relief under 42

---

**5.** The various labels that the Plaintiff places on the Defendants' actions are not controlling. In determining whether the Plaintiff's Complaint states a claim upon which relief may be granted, the Court must look to the facts alleged in support of his § 1983 claim. *See Lewellen v. Metro. Government of Nash-*

*ville and Davidson County, Tennessee*, 34 F.3d 345, 349 (6th Cir.1994) ("The mere allegation of gross negligence—or the use in the pleadings of any other 'vituperative epithet,' for that matter—will avail the plaintiff nothing, of course, if the facts alleged are not sufficient to make out a constitutional violation.").

U.S.C. § 1983. The core concept of due process is protection against arbitrary government action. *County of Sacramento v. Lewis*, 523 U.S. 833, 845, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Thus, in order to state a claim under the substantive due process component of the Fourteenth Amendment,[6] the Plaintiff must allege facts sufficient to support a finding that the Defendants engaged in conduct that is "arbitrary, or conscience shocking, in a constitutional sense."[7] *Lewis*, 523 U.S. at 847, 118 S.Ct. 1708. Only the most egregious official conduct will satisfy this standard. *Id.* at 846, 118 S.Ct. 1708. Indeed, the Supreme Court has made clear that the substantive component of the Due Process Clause does not "impose[ ] liability whenever someone cloaked with state authority causes harm." *Id.* at 848, 118 S.Ct. 1708. More specifically, the Court has recognized that the Fourteenth Amendment "is not a 'font of tort law to be superimposed upon whatever systems may already be administered by the States[.]' " *Id.* (quoting *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)). As a result, the Court has rejected "customary tort liability as any mark of sufficiently shocking conduct, and [it has] held that the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Id.* at 848–849, 118 S.Ct. 1708.

Consistent with the foregoing principles, the Supreme Court found no viable § 1983 claim, premised upon a substantive due process violation, in *Collins v. City of Harker Heights*, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), despite the plaintiff's allegation that the defendant city had subjected her husband to an unreasonable risk of physical injury, leading to his death by asphyxiation after he entered a manhole to unstop a sewer line. *Id.* at 117, 112 S.Ct. 1061. In support of her claim, the plaintiff in *Harker Heights* alleged that the decedent had a constitutional right to be free from unreasonable risks of harm. She also alleged that the city had provided its employees with inadequate training, and had failed to provide sufficient safety equipment and warnings. Finally, the plaintiff alleged that a prior accident in a manhole had placed the city on notice of the dangers to the decedent.

■ Upon review, the *Harker Heights* Court reasoned that the plaintiff's complaint failed to allege a substantive due process violation. In reaching this conclusion, the Court held that the Due Process Clause does not impose upon a governmental employer a duty to provide its employees with a safe working environment. *Id.* at 126, 112 S.Ct. 1061.

> "The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liber-

---

6. The substantive component of the Due Process Clause "bar[s] certain government actions regardless of the fairness of the procedures used to implement them" in order "to prevent governmental power from being 'used for purposes of oppression.' " *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 18 How. 272, 277, 15 L.Ed. 372 (1855)).

7. Although the Defendants contend in their Memorandum that the "shocks the conscience" standard applies only to excessive force claims, that standard actually has been applied "in a variety of contexts." *Lillard v. Shelby County Board of Education*, 76 F.3d 716, 725 (6th Cir.1996).

ty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. Nor does history support such an expansive reading of the constitutional text."

*Id.* (quoting *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989)).[8]

The *Harker Heights* Court also held that the plaintiff's allegations regarding failure to train, failure to warn and failure to provide a safe workplace were analogous to a state-law tort claim. *Id.* at 128, 112 S.Ct. 1061. Such allegations, the Court reasoned, cannot "properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Id.* (recognizing that the Due Process Clause does not "impose federal duties that are analogous to those traditionally imposed by state tort law"). In short, the Court concluded that substantive due process does not "guarantee municipal employees a workplace that is free of unreasonable risks of harm." *Id.* at 129, 112 S.Ct. 1061.

Similarly, in *Lewellen v. Metro. Government of Nashville and Davidson County, Tennessee,* 34 F.3d 345, 349 (6th Cir. 1994), the Sixth Circuit found no substantive due process violation arising from allegations that the defendants deliberately built a school beneath a high-voltage conductor line, deliberately delayed removing the line, and willfully disregarded very high risks created by these actions. The plaintiff in *Lewellen* suffered severe electrical burns after coming into contact with the power line while working on a construction project. Following his injury, the plaintiff filed suit, setting forth a § 1983 claim based upon a violation of his substantive due process rights.

Upon review, the *Lewellen* court noted that substantive due process violations arise from deliberate actions of government officials, not negligent conduct. *Id.* at 348. The court then reasoned as follows:

It is true that the defendants acted intentionally in delaying the planned move of the power line, but the *Harker Heights* defendants acted intentionally in sending Mr. Collins down the manhole without warning him of the known hazard from sewer gas and without providing him proper safety equipment.... What the defendants in this case clearly did *not* do was engage in arbitrary conduct intentionally designed to punish someone.... That kind of deliberate misconduct, *Harker Heights* suggests, may result in liability under § 1983. But the injuries suffered by plaintiff Lewellen, like the death of Mr. Collins, resulted from what was at worst gross negligence. Gross negligence is not actionable under § 1983, because it is not "arbitrary in the constitutional sense." (citation omitted).

When all is said and done, this case, like *Harker Heights,* amounts to nothing more than a non-intentional tort case the

---

8. In finding no constitutional obligation on the part of the defendant city to provide the decedent with a safe workplace, the *Harker Heights* Court distinguished cases in which plaintiffs have been injured while in custody or otherwise deprived of their liberty. When a plaintiff has been deprived of his liberty, the Court noted, the government does have a constitutional duty to ensure certain levels of safety. *Id.* at 127–138, 112 S.Ct. 1061. Given that the decedent's voluntary employment with the city did not create a special relationship, such as that existing between the government and individuals who have been deprived of their liberty, the Court held that substantive due process did not require the defendant city to ensure his safety.

facts of which give the plaintiff a strong claim on our sympathies. . . .

*Id.* at 351.

■ In light of the foregoing authorities, the Court concludes that the facts alleged in the Plaintiff's Complaint fail to demonstrate a violation of Lamar Pope's substantive due process rights. Lamar Pope was not deprived of his liberty when he voluntarily elected to play basketball during the open-gym tryout. Consequently, the Fourteenth Amendment did not impose upon the Defendants an obligation to assure his safety.[9] *Harker Heights,* 503 U.S. at 127–128, 112 S.Ct. 1061. Pope's status as a student does nothing to change this conclusion. *See Doe v. Claiborne County, Tennessee,* 103 F.3d 495, 510 (6th Cir.1996) (rejecting the proposition that a "special relationship" exists between a school and its students, and reasoning that a school system's *in loco parentis* status and compulsory attendance laws do not raise its common-law obligation to create and to maintain a safe environment to the level of a constitutional duty).

■ Even if Pope's injury was foreseeable, and even if the Defendants created an opportunity for harm by requiring him to play on a "short court," the factual allegations contained in the Plaintiff's Complaint do not suggest any arbitrary, deliberate misconduct by McKinney or the other Defendants that was designed to punish or otherwise to harm the decedent. According to the Plaintiff, the Defendants "knew or should have known that the prac-

tice of allowing (80) eighty boys to try-out for the basketball team on courts that did not provide adequate distance from the base line to the wall, and the coach's active participation in the game instead of supervising[,] could have resulted in injury" to Pope. (Complaint, attached to Doc. # 1 at Exh. A, ¶ 85). Construed most strongly in favor of the Plaintiff, these allegations suggest nothing more than an unintentional tort. They fall far short of the type of governmental misconduct required to support a § 1983 claim premised upon a substantive due process violation. In short, gross negligence or even stupidity, such as demonstrated herein, no matter how egregious or tragic in its consequences, simply does not rise to the level of a constitutional tort.

■ The other allegations in the Plaintiff's Complaint also fail to state a viable § 1983 claim based upon a substantive due process violation. As noted, *supra,* the Plaintiff alleges that a "relationship" existed between Lamar Pope and the Defendants. The existence of a "relationship," however, does not give rise to a constitutional duty on the part of school officials to protect students. Rather, some type of "special relationship," such as that existing between detainees and jail officials, is needed to create a constitutional duty to provide minimal levels of safety. *Harker Heights,* 503 U.S. at 127, 112 S.Ct. 1061.[10] The mere existence of some "relationship" between Pope and the Defendants may be sufficient to support a state-law tort claim, but it does not impose any

---

**9.** This is not to say that state tort law may not have imposed such a duty. The Court expresses no opinion on that issue.

**10.** In *Harker Heights,* the Court recognized that the Due Process Clause requires state officials to provide minimal levels of safety for individuals who have been deprived of their liberty. The loss of liberty, the *Harker Heights* Court explained, creates a special relationship

that gives a detainee a substantive due process right to minimal levels of safety and security. *Harker Heights,* 503 U.S. at 127, 112 S.Ct. 1061. No similar special relationship existed between Lamar Pope and the Defendants based upon his status as a student. *Doe v. Claiborne County, Tennessee,* 103 F.3d 495, 510 (6th Cir.1996).

constitutionally based duty of care upon the Defendants.

■ The Plaintiff also alleges that Lamar Pope failed to receive prompt medical attention because McKinney lacked the CPR training required by Ohio law. (Doc. #1 at Exh. A, ¶41, 87). Even if true, however, this allegation is insufficient to establish a substantive due process violation. *See, e.g., Harker Heights,* 503 U.S. at 129–130, 112 S.Ct. 1061 (reasoning that the defendants' violation of a duty imposed by state law failed to support a § 1983 claim premised upon a substantive due process violation); *Lewellen,* 34 F.3d at 347 (finding no substantive due process violation, despite the fact that the defendants permitted construction of a building too close to a power line in violation of state law). The Plaintiff also alleges that the Defendants acted in "willful disregard" of Pope's safety because the October 28, 1997, open gym session was held approximately two weeks earlier than allowed by Ohio law. (Doc. #1 at Exh. A, ¶53, 88). Once again, such a violation of Ohio law is insufficient to establish a substantive due process violation. Finally, the Plaintiff contends that McKinney disregarded Pope's safety by participating in the basketball games rather than supervising them. (*Id.* at ¶88). As set forth above, however, McKinney's participation in the games constitutes, at most, negligence. Consequently, his actions will not support a § 1983 claim grounded in the Fourteenth Amendment.

In opposition to the foregoing conclusions, the Plaintiff advances only one argument. Specifically, he alleges that Count VI of his Complaint states a viable § 1983 claim under the "state-created danger" doctrine. In *Kallstrom v. City of Columbus,* 136 F.3d 1055, 1066 (6th Cir.1998), the Sixth Circuit acknowledged the existence of this doctrine as a potential source of liability under § 1983. Although a "state generally does not shoulder an affirmative duty to protect its citizens from private acts of violence," the state-created danger doctrine recognizes that a state "may not cause or greatly increase the risk of harm to its citizens without due process of law through its own affirmative acts." *Id.* at 1066. "Liability under the state-created-danger theory is predicated upon affirmative acts by [a state actor] which either create or increase the risk that an individual will be exposed to private acts of violence." *Id.* As the Seventh Circuit explained in *Bowers v. DeVito,* 686 F.2d 616, 618 (7th Cir.1982), "[i]f the state puts a man in a position of danger from private persons and then fails to protect him, it will not be heard to say that its role was merely passive; it is as much an active tortfeasor as if it had thrown him into a snake pit."

■ The foregoing authorities make clear, however, that the state-created danger theory does not apply when harm is inflicted by a defendant state actor rather than by a third party. Indeed, as the Sixth Circuit expressly stated in *Kallstrom,* the essence of the theory is that a state actor places an individual in a dangerous situation that leads to harm from private acts of violence committed by a third party. *Kallstrom,* 136 F.3d at 1066; *see also Johnson v. Dallas Independent School Dist.,* 38 F.3d 198, 201 (5th Cir. 1994), *cert. denied,* 514 U.S. 1017, 115 S.Ct. 1361, 131 L.Ed.2d 218 (1995) (reasoning that for § 1983 liability to be imposed under the state-created danger theory, the environment created by state actors must be dangerous, the state actors must know that it is dangerous, and "they must have used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur"); *L.W. v. Grubbs,* 974 F.2d 119, 121 (9th Cir.1992) (recognizing that the state-creat-

**812**

ed danger doctrine is an exception to the general rule that "members of the public have no constitutional right to sue state employees who fail to protect them against harm inflicted by third parties").

 As the Defendants properly note, the state-created danger doctrine has no applicability in the present case, because they did not knowingly place Lamar Pope in a dangerous environment where he suffered harm due to acts of violence committed by a private third party.[11] To the contrary, the factual allegations in the Plaintiff's Complaint suggest, at most, that Lamar Pope suffered a tragic injury as a

result of McKinney's failure to exercise due care in the operation of the open gym basketball tryout. The Plaintiff's Complaint sounds, if at all, as nothing more than a state-law claim of negligence by Defendant McKinney.[12] As set forth above, however, § 1983 does not impose liability for mere violations of state tort law. Absent a deprivation of Lamar Pope's constitutional rights, Count VI of the Plaintiff's Complaint fails to state a claim upon which relief may be granted.[13] Accordingly, the Defendants' Motion to Dismiss (Doc. # 18) will be sustained with respect to the Plaintiff's § 1983 claim in Count VI.

---

11. In his Memorandum (Doc. # 21 at 17), the Plaintiff relies exclusively upon *Sciotto v. Marple Newtown School Dist.*, 1999 WL 79136 (E.D.Pa. Feb.9, 1999) (unpublished). In *Sciotto*, the defendant school officials encouraged a college wrestler, who was an alumnus of their high school, to attend wrestling practices and to compete against a much lighter high school wrestler, resulting in injuries to the younger and lighter wrestler. On review, the district court concluded that the plaintiff's complaint stated a viable § 1983 claim under the state-created danger doctrine, based upon the defendants' acts of permitting and encouraging an adult wrestler to participate in high school wrestling practices. Given that *Sciotto* involved state actors (the defendant high school officials) who created a situation in which they subjected the injured high school wrestler to harm at the hands of a third party (the college wrestler), the district court's ruling is distinguishable from, and not inconsistent with, the analysis set forth herein. As noted above, the present case does not involve an injury arising from the physical acts of a third party. Rather, Lamar Pope sustained his injury as a result of McKinney's alleged failure to exercise due care in operating the open gym basketball tryout.

12. Parenthetically, the Court notes that, under the Plaintiff's broad interpretation, the state-created danger doctrine would apply in almost every instance where an individual is injured due to the negligence of a state actor. Indeed, one could argue that the decedent in *Harker Heights* died because the de-

fendants caused or greatly increased the risk of harm by requiring him to work in a gas-filled manhole. Likewise, one could argue that the Plaintiff in *Lewellen* sustained his injuries because the defendants caused or greatly increased the risk of harm by requiring him to work near a live power line. The state-created danger doctrine properly cannot be construed so broadly, however, as it requires "affirmative acts by [a state actor] which either create or increase the risk that an individual will be exposed to *private acts of violence*." *Kallstrom*, 136 F.3d at 1066 (emphasis added).

13. With respect to Defendants Trotwood–Madison City School District Board of Education and the Board members, who have been sued in their official capacities, the Court notes that Count VI of the Plaintiff's Complaint is also deficient because it fails to set forth a basis for imposing municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In any event, the Court's conclusion that McKinney did not deprive Lamar Pope of any constitutional right a fortiori compels dismissal of the Plaintiff's § 1983 claim against the Board of Education and the "official capacity" § 1983 claim against the Board members. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) (recognizing that if a plaintiff cannot establish a constitutional deprivation at the hands of an individual state actor, he necessarily cannot prevail on a theory of municipal liability).

Having sustained the Defendants' Motion to Dismiss, insofar as it relates to Count VI, which is the only federal-law claim contained in the Plaintiff's Complaint, the Court hereby declines to exercise supplemental jurisdiction over Counts I, II, III, IV, V, VII, VIII, IX and X, all of which assert state-law claims. It is well settled that a district court may decline to exercise supplemental jurisdiction over state-law claims once it has dismissed all claims over which it possessed original jurisdiction. *Saglioccolo v. Eagle Ins. Co.,* 112 F.3d 226, 233 (6th Cir.1997). Indeed, the Sixth Circuit has recognized that if all federal claims are dismissed before trial, remaining state-law claims generally should be dismissed as well. *Id.; see also Taylor v. First of Am. Bank–Wayne,* 973 F.2d 1284, 1287 (6th Cir.1992). Accordingly, the Plaintiff's various state-law claims will be dismissed, without prejudice to refiling in a state court of competent jurisdiction.

III. *Conclusion*

Based on the reasoning and citation of authority set forth above, the Defendants' Motion to Dismiss (Doc. # 18) is sustained, insofar as it relates to the federal claim set forth in Count VI of the Plaintiff's Complaint. The Defendants' Motion to Dismiss (Doc. # 18) is not ruled upon, insofar as it relates to the state-law claims contained in Counts I, II, III, IV, V, VII, VIII, IX and X of the Plaintiff's Complaint. These state-law claims are hereby dismissed, without prejudice to refiling in a state court of competent jurisdiction.

Judgment will be entered in favor of the Defendants and against the Plaintiff on Count VI of the Plaintiff's Complaint. Counts I, II, III, IV, V, VII, VIII, IX and X of the Plaintiff's Complaint are dismissed, without prejudice to refiling in a state court of competent jurisdiction.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.