Kyle BROZUSKY, a minor in his own right and by and through his parent and natural guardian Jolene Brozusky, Jolene BROZUSKY, Individually Plaintiffs,

v.

HANOVER TOWNSHIP, Hanover Area School District, Defendants.

No. 3:CV–01–1326.

United States District Court,
M.D. Pennsylvania.

Sept. 20, 2002.

## MEMORANDUM

VANASKIE, Chief Judge.

The dispositive issue in this case is whether local government entities may be held liable under 42 U.S.C. § 1983 for failing to take action that purportedly would have minimized the risk of a child being struck by an automobile when arriving late for school. While there may be liability under the state law of negligence, the alleged failure of defendants Hanover Township and the Hanover Area School District (the "School District") to protect the minor plaintiff from the negligence of third-party motorists does not violate the Due Process Clause of the Fourteenth Amendment. Accordingly, the defendants' motions to dismiss the civil rights claims asserted against them will be granted and, as this case had been removed to this Court because of the assertion of those federal civil rights claims, the action will be remanded to the Court of Common Pleas of Luzerne County for adjudication of the remaining state law claims.

## I. BACKGROUND

The Complaint, the averments of which are accepted as true for purposes of deciding the pending motions to dismiss, alleges that in April of 1999 Kyle Brozusky, who was then seven years of age, was a student at the Hanover Green Elementary School located along Main Street in Hanover Township, Pennsylvania.[1] A paved parking lot in front of the school building was surrounded by a fence. There was no access to the parking area from Main Street, but there was an entry point along a side street. A gate controlling the access to the parking lot from the side street was locked at 8:30 a.m.[2] Due to the lack of

Lesa S. Gelb, Cefalo & Associates, West Pittston, PA, for plaintiffs.

Fred B. Buck, Sandra L. Jacques, Rawle & Henderson, LLP, Philadelphia, PA, John P. Finnerty, Dougherty Leventhal & Price, LLP, Moosic, PA, for defendants.

1. The Complaint alleges that the school was located at 561 Main Street, (Complaint, ¶ 5), but thereafter sometimes refers to the street in front of the school as "Main Road." For the balance of this opinion, the roadway at issue in this case will be referred to as "Main Street." The Complaint is also inconsistent as to the date of the motor vehicle accident, sometimes using the year 1998, and at other times using 1999. As the precise year of the accident is not particularly relevant to the issues now before the Court, it will be assumed that the accident occurred in 1999.

2. As defendants point out, the assertion that the gate was locked at 8:30 a.m. was not

access to the paved parking area, students who were driven to the school were dropped off on Main Street, a heavily-traveled two way road.

The Complaint further alleges that work was done on the paved parking area in front of the school in 1987 and 1988, but nothing was done to provide access to the paved parking area from Main Street. Construction work at the school was also undertaken in 1995, but once again nothing was done to allow access to the paved parking area from Main Street.

There was a crosswalk in front of the school across Main Street, along with a flashing safety control device. In addition, a crossing guard was stationed at the crosswalk during the time of day when students arrived for and departed from school.

On April 28, 1999, at approximately 9:18 a.m., the minor plaintiff, Kyle Brozusky, was brought to the school by his grandfather following an appointment at a dentist. Kyle's grandfather stopped his vehicle in the northbound lane of Main Street, which is on the opposite side of the street from the school building. Kyle exited his grandfather's vehicle, and proceeded around its front to cross the street while his grandfather remained in the vehicle. As Kyle proceeded to cross the street, a pick-up truck, also proceeding in a northerly direction, swerved around the grandfather's vehicle and struck Kyle, causing him to suffer serious injuries.

At the time of the accident, the crossing guard was no longer stationed at the cross walk. Furthermore, the flashing safety control device had either been turned off before 9:18 a.m. or was not working on the date of the accident.

Plaintiffs commenced this action by the issuance of a writ of summons in the Court of Common Pleas of Luzerne County on November 17, 2000. The only named defendants are Hanover Township and the Hanover Area School District. Plaintiffs filed their Complaint in the Luzerne County Court on June 21, 2001.

The Complaint contains two "Causes of Action," one against each defendant, with four separate Counts being asserted against each of the defendants. Count I against each defendant asserts a claim for relief under common law negligence principles. That Count is not at issue on defendants' motions to dismiss.

Count II seeks recovery under 42 U.S.C. § 1983 on the theory that Hanover Township and the School District violated the protection against arbitrary governmental action afforded by the substantive component of the Due Process Clause of the Fourteenth Amendment by creating the dangerous condition that was directly responsible for the accident that caused Kyle Brozusky's injuries. In support of their state-created danger theory, the plaintiffs allege:

That the wrought iron fence that surrounded Hanover Green Elementary School on Main Street constituted state created dangers consisting of the following:

a. In failing to provide a driveway, gate or other access in the wrought iron fence surrounding the off-street parking area in front of the Hanover Elementary school from Main Street [to] allow ingress and egress to persons dropping children off at the Hanover Elementary School.

included in the Complaint, but was instead first mentioned in Plaintiff's Brief in Opposition to the Motions to Dismiss. For purposes of addressing the motions to dismiss, the averment that a gate into the paved parking area was locked at 8:30 a.m. will nonetheless be accepted as true.

b. In failing to provide an alternative off-street parking area so that parents can drop children off at the Hanover Green Elementary School.

c. In failing to have a safety plan in effect to protect students who arrive late at the Hanover Green Elementary School.

d. In failing to have the traffic control device operating at all times during the school day so as to protect students who arrive late at the Hanover Green Elementary School.

e. In allowing the crossing guard to leave at 9:15 in the morning and not having an alternative safety plan when they know that a student is arriving late on that day.

(Complaint, ¶¶ 43, 74.) The Complaint furthers avers that both Hanover Township and the School District failed to correct the alleged dangerous condition caused by the fencing of the parking area when renovations to the school were undertaken in 1987–88 and 1995. Plaintiffs claim that the failure to provide access to cars from Main Street to the paved parking area constituted "deliberate indifference" to Kyle's constitutionally-protected interests. (Complaint, ¶¶ 44–45, 75–76.) In this regard, plaintiffs assert that Kyle "had a clearly established constitutional right ... [t]o be free from school officials' deliberate indifference to the danger of serious injury caused by invasions of his right to bodily integrity perpetrated by third parties," as well as "a liberty interest ... to freedom from school officials' deliberate indifference to, or affirmative acts that increase the danger of, serious injury from unjustified invasions of bodily integrity perpetrated by third parties in the school setting." (Id., ¶¶ 40 and 54.)

The Complaint's third Count against each defendant purports to assert liability for a policy practice or custom of:

a. deactivating the traffic control device.

b. sending the crossing guard home at 9:15 in the morning.

c. of failing to have alternative safety arrangements in place to protect those students who arrive late.

d. of denying access to the off-street parking area in front of the Hanover Green Elementary School.

(Id., ¶¶ 56, 87.)

Finally, Count IV in the separate causes of action brought against each defendant asserts a claim for punitive damages. Plaintiff's aver that "the negligent, careless, reckless and outrageous acts of the Defendant ... evidence a total disregard for the life, health and safety of the Plaintiff, Kyle Brozusky, and constitute a willful and wanton misconduct on the part of the Defendant." (Id., ¶¶ 60, 91.)

Defendants removed the state court action to this Court on July 17, 2001, relying upon the existence of claims under 42 U.S.C. § 1983. Thereafter, each defendant moved separately to dismiss Counts II through IV. The motions have been fully briefed, and the matter is ripe for disposition.

## II. DISCUSSION

### A. Standard of Review

In deciding a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must draw all reasonable inferences from the facts pled in the complaint and construe them in the light most favorable to the claimant. *Unger v. National Residents Matching Program*, 928 F.2d 1392, 1400 (3d Cir.1991); *Truhe v. Rupell*, 641 F.Supp. 57 (M.D.Pa. 1985). The Court, however, "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss," *Morse v. Lower Merion School*

*District,* 132 F.3d 902, 905 (3d Cir.1997) (quoting *In re Burlington Coat Factory Securities Litigation,* 114 F.3d 1410, 1429–30 (3d Cir.1997)), and should reject "unwarranted inferences" and "unsupported conclusions." *Id.* at 906, n. 8 (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed.1997)). Thus, a Rule 12(b)(6) motion does not serve to question a plaintiff's well-pled facts, but rather tests the legal foundation of the plaintiff's claims. *United States v. Marisol, Inc.,* 725 F.Supp. 833, 836 (M.D.Pa.1989). The Rule 12(b)(6) movant carries the burden of showing the legal insufficiency of the claims asserted. *Johnsrud v. Carter,* 620 F.2d 29, 33 (3d Cir.1980). A Rule 12(b)(6) motion will be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Pennsylvania House, Inc. v. Barrett,* 760 F.Supp. 439, 449–50 (M.D.Pa.1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see Brown v. Philip Morris, Inc.,* 250 F.3d 789, 796 (3d Cir.2001) ("[w]e may dismiss the complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations").

## B. Local Government Liability

■■■■ "Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights,* 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). Where, as here, the plaintiff asserts a claim against a local governmental entity, two fundamental issues are presented: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the [local government] is responsible for that violation." The second inquiry is essential because "a municipality cannot be held liable *solely* because it employs

a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (emphasis in original). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. 2018. At the pleadings stage, plaintiffs must allege that a practice, policy or custom of the charged municipality "was a cause in fact of the deprivation of rights inflicted." *Leffall v. Dallas Independent School District,* 28 F.3d 521, 525 (5th Cir.1994).

Defendants have each moved to dismiss the counts of the complaint purporting to assert claims premised upon a governmental "policy, practice or custom," arguing that "in order to establish a § 1983 claim under a policy, practice or custom theory, the underlying violative act must have been committed by a state actor pursuant to the policy." (Hanover Township Brief in Supp. of Motion to Dismiss (Dkt. Entry 5) at unnumbered page 12.) In support of their position, defendants cite the *en banc* Third Circuit decision in *D.R. v. Middle Bucks Area Vocational Technical School,* 972 F.2d 1364, 1376 (3d Cir.1992), in which the court observed that liability premised upon the establishment of a governmental "custom, practice or policy" could not be sustained "because private actors committed the underlying violative acts." Accord, *Page ex rel. Page v. School District of Philadelphia,* 45 F.Supp.2d 457, 467 (E.D.Pa.1999).

Significantly, plaintiffs concede that they "cannot sustain a Cause of Action for a civil rights violation under the custom, policy or practice theory of liability." (Brief

in Opp. to School District Motion to Dismiss (Dkt. Entry 10) at 16.) Accordingly, defendants are entitled to dismissal of the third Counts asserted against each of them.

Plaintiffs' concession as to the lack of viability of its "custom, policy or practice" theory of liability raises the question of whether the justiciability of their state-created danger claims must be addressed. Plaintiffs' concession was clearly not intended to cover the state-created danger claims asserted against each of the governmental defendants. It has been recognized that a local government may be held liable on a "state-created danger" claim where the plaintiff shows that policy-makers were plainly aware of the dangerous situation and acquiesced in it. *See Sciotto v. Marple Newton School District*, 81 F.Supp.2d 559, 574 (E.D.Pa.1999). Plaintiffs appear to be pursuing their state-created danger claims on this premise. Accordingly, it is appropriate to determine whether the facts alleged in the Complaint support a cause of action for denial of due process based upon a state-created danger theory.

### C. State Created Danger Claims

■ Plaintiffs' civil rights claims against Hanover Township and the School District rest on the Due Process Clause of the Fourteenth Amendment, and, in particular, its substantive component. As expressed in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 195, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), the substantive aspect of the due process clause is "a limitation on the State's power to act, not ... a guarantee of certain minimal levels of safety and security." Stated otherwise, the intent of the Due Process Clause is "to protect the people from the State, not to ensure that the State protects them from each other." *Id.* at 196, 109 S.Ct. 998. As explained in *Pope v. Trotwood–Madison City School District*

*Board. of Education*, 162 F.Supp.2d 803, 808 (S.D.Ohio 2000) (internal citations omitted):

The core concept of due process is protection against arbitrary government action. Thus, in order to state a claim under the substantive due process component of the Fourteenth Amendment, the Plaintiff must allege facts sufficient to support a finding that the Defendants engaged in conduct that is "arbitrary, or conscience-shocking, in a constitutional sense." Only the most egregious official conduct will satisfy this standard. Indeed, the Supreme Court has made clear that the substantive component of the Due Process Clause does not "impose liability whenever someone cloaked with state authority causes harm." More specifically, the Court has recognized that the Fourteenth Amendment "is not a font of tort law to be superimposed upon whatever systems may already be administered by the States." As a result, the Court has rejected "customary tort liability as any mark of sufficiently shocking conduct, and [it has] held that the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."

Consistent with its reluctance to expand the concept of substantive due process, the Supreme Court refused to sanction liability against a municipal defendant on the theory that it had a " 'custom and policy of deliberate indifference toward the safety of its employees.' " *Collins*, 503 U.S. at 117, 112 S.Ct. 1061. In *Collins*, a sanitation department employee sustained fatal injuries after entering a manhole to unstop a sewer line. The decedent's widow complained that the city had a custom and policy of failing to train its employees about the dangers of working in sewer lines, not providing adequate safety equip-

ment, and not providing adequate warnings. Plaintiff alleged that the city had notice of the risks of entering sewer lines as a result of a prior accident. The Court construed the Complaint as presenting two theories: "that the Federal Constitution imposes a duty on the city to provide its employees with minimal levels of safety and security in the workplace, or that the city's 'deliberate indifference' to Collins' safety was arbitrary government action that must 'shock the conscience' of federal judges." *Id.* at 126, 112 S.Ct. 1061.

Describing the first theory—that a municipality has a constitutional obligation to afford its employees with minimal levels of safety and security—as "unprecedented," the Court ruled that "[n]either the text nor the history of the Due Process Clause supports petitioner's claim that the governmental employer's duty to provide its employees with a safe working environment is a substantive component of the Due Process Clause." *Id.* The Court also held that the alleged failure to train or warn of known risks could *not* "properly be characterized as arbitrary, or conscience-shocking, in a constitutional sense." *Id.* at 128, 112 S.Ct. 1061. In support of this conclusion, the Court explained:

> Petitioner's claim is analogous to a fairly typical state-law tort claim:
>
> The city breached its duty of care to her husband by failing to provide a safe work environment. Because the Due Process Clause "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society," we have previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law.

*Id.* at 128, 112 S.Ct. 1061 (internal citations omitted).

*Collins* appears to control the outcome of this case. The fact that *Collins* concerned a claim against a municipality as an employer, while this action concerns the status of the defendant as, in one case, an educator, and in the other case, a municipality with obligations for roadway safety, does not alter the fundamental analysis employed in *Collins.* Indeed, the Supreme Court criticized the lower court's analysis that rested on the status of the victim as an employee as opposed to an "ordinary citizen over whom [the city] exercised governmental power," noting that "[t]he employment relationship . . . is not of controlling significance." *Id.* at 119, 112 S.Ct. 1061. The Court went on to explain that the analysis should remain the same regardless of the status of the injured party, stating that "it would seem that a claim by . . . a pedestrian should be analyzed in a similar manner as the claim by this petitioner." *Id.* Thus, the Court's twin holdings on the liability theories—(1) that there is no constitutional obligation to provide a safe environment to persons who are not in the custody of the state, and (2) that allegations of failure to train or warn or guard against known risks, despite being labeled as "deliberate indifference," cannot "be characterized as arbitrary, or conscience-shocking, in a constitutional sense," *id.* at 128, 112 S.Ct. 1061—are equally applicable here. Neither Hanover Township nor the School District owed an obligation of constitutional dimension to assure the safety of students coming to the school by private vehicle. Moreover, the bald characterizations of "deliberate indifference" and "willful disregard" do not transform the underlying omissions to remedy an alleged unsafe condition into arbitrary or conscience-shocking conduct in a constitutional sense.

Buttressing this conclusion is the following rationale from *Collins:*

> Our refusal to characterize the city's alleged omission in this case as arbitrary

in a constitutional sense rests on the presumption that the administration of government programs is based on a rational decisionmaking process that takes account of competing social, political, and economic forces. Decisions concerning the allocation of resources to individual programs, such as sewer maintenance, and to particular aspects of those programs, such as the training and compensation of employees, involve a host of policy choices that must be made by locally elected representatives, rather than by federal judges interpreting the basic charter of government for the entire country.

*Id.* at 128–29, 112 S.Ct. 1061.

The "presumption that the administration of governmental programs is based on a rational decisionmaking process that takes account of competing social, political, and economic forces," *id.* at 128, 112 S.Ct. 1061, also compels the conclusion that the actions and omissions at issue in this case cannot be regarded as arbitrary in a constitutional sense. Whether to provide access from a heavily-traveled roadway to a parking area in front of a school, whether to station a crossing guard at times other than the normal time for arriving at and departing from school, and whether to install traffic controls, involve allocation of resources and other considerations that are best left to locally elected representatives as opposed to the federal judiciary applying the fundamental guarantees of our Constitution.[3] "While the measure of what is conscience shocking is no calibrated yard stick," *County of Sacramento v. Lewis,* 523 U.S. 833, 847, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), the Court's decision in *Collins* forecloses a finding of conscience-shocking activity based upon the averments of the Complaint in this case.

■ *Collins,* of course, did not involve a state-created danger theory. It was, however, a substantive due process case. Conscience-shocking conduct is a prerequisite for any substantive due process claim. *See Miller v. City of Philadelphia,* 174 F.3d 368, 374–75 (3d Cir.1999).

■ As framed by our Court of Appeals, there are four elements to a state-created danger claim: (1) the harm ultimately caused was foreseeable and fairly direct; (2) conduct by a state actor in willful disregard for the safety of the plaintiff; (3) some relationship between the state and the plaintiff; and (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur. *Morse v. Lower Merion School District,* 132 F.3d 902, 908 (3d Cir.1997). The standard of liability—willful disregard for the safety of the plaintiff—was articulated prior to the Supreme Court's decision in *Lewis* and our Court of Appeals' ruling in *Miller,* which recognized that, in all substantive due process cases, the plaintiff must show that the actor's behavior shocks the judicial conscience. In *Pahler v. City of Wilkes–Barre,* 31 Fed.Appx. 69, 2002 WL 389302 (3d Cir.2002) (unpublished), our Court of Appeals agreed with the ruling of Judge Nealon of this Court that the second factor set forth above—willful disregard for the victim's safety—"has been modified by the 'shocks the conscience' standard, and what rises to that level will ultimately depend on the factual scenario of the case at hand." *Id.* at 71, 2002 WL 389302, at *2. While the Third Circuit ruling in *Pahler* is not entitled to precedential effect, it is instructive. Moreover, other courts who have addressed this issue have concluded that conscience-shocking con-

---

3. There may, indeed, be sound reasons for enclosing a school parking lot, such as security for both cars and children.

duct is an essential element of a claim based upon the state-created danger theory. *See, e.g., Ewolski v. City of Brunswick,* 287 F.3d 492, 510 (6th Cir.2002), *S.S. v. McMullen,* 225 F.3d 960, 964 (8th Cir. 2000) (*en banc*).

Other courts confronting state-created danger claims have refused to expand the concept of substantive due process to cover a state actor's judgement call as to the allocation of resources on matters pertaining to safety. For example, in *Pahler, supra,* the plaintiff was accidentally shot by another law enforcement officer while conducting a drug raid. Plaintiff claimed that the failure to utilize the city's Emergency Services Unit, which had been specifically trained for such operations, reflected a deliberate disregard for the safety of the officers conducting the raid. Both Judge Nealon of this Court and our Court of Appeals summarily concluded that the decision not to use the Emergency Services Unit to maximize the safety of the officers participating in the drug raid did not reflect such deliberate indifference as to shock the judicial conscience.

In *Pope, supra,* the plaintiff advanced a state-created danger theory in support of a claim arising out of a student's accidental death during voluntary basketball tryouts. The student had run head first into a wall located only five feet from the end-line of a basketball court. Pertinent standards suggested that the distance between the end-line and the wall should have been at least ten feet. Plaintiff claimed that the defendants were deliberately indifferent to the hazard posed by the proximity of the wall to the end-line. Relying upon *Collins,* the court ruled that even if the injury was foreseeable and even if the defendants had created an opportunity for harm, the Complaint's averments did not suggest conduct that was arbitrary or conscience-shocking in a constitutional sense.

In *Leffall, supra,* the plaintiffs' daughter was accidentally and fatally shot while attending a dance held on school grounds. Plaintiffs alleged that the School District had been warned that students often fired handguns randomly and recklessly at such events. The court ruled that the decision to sponsor the dance despite knowledge of the dangers could not be said to rise to the level of deliberate indifference sufficient to shock the conscience. *Id.* at 531–32.

■ Consistent with the analyses in *Collins* and the foregoing cases, I find, as a matter of law, that the alleged actions and omissions of the municipal entities in this case do not shock the conscience. Such a determination is compelled by "(1) the need for restraint in defining the scope of substantive due process claims; (2) the concern that § 1983 not replace state tort law; and (3) the need for deference to local policymaking bodies in making decisions impacting public safety." *Ruiz v. McDonnell,* 299 F.3d 1173, 1184 (10th Cir.2002).

■ Even if the Complaint were sufficient to allege conscience-shocking conduct, dismissal would nonetheless be warranted because it does not satisfy another essential element of the state-created danger theory—"the state actors used their authority to create an opportunity that otherwise would not have existed for the harm to occur." *Kneipp v. Tedder,* 95 F.3d 1199, 1208 (3d Cir.1996).

In *D.R. supra,* public high school students allegedly molested by other students in a unisex bathroom and a darkroom that were part of a graphic arts classroom brought an action under the state-created danger theory. One of the plaintiffs' claims was that the state had increased the danger to the students by constructing a unisex bathroom and a darkroom closed off from the main classroom. Affirming the dismissal of the complaint, the court ruled that the defendants had not "created or increased plaintiffs' risk of danger by

constructing and maintaining the graphic arts classroom with its particular physical layout." 972 F.2d at 1375.

In *Roberson v. City of Philadelphia,* Civ. A. No. 99–3574, 2001 WL 210294, 2001 U.S.Dist. LEXIS 2163 (E.D.Pa. March 2, 2001), the court held that the decision of police officers to leave a scene to which they had been summoned as a result of a disturbance could not result in liability under the state-created danger theory because "the officers' decision to leave did not create the danger the plaintiffs faced...." *Id.* at * 39, 2001 WL 210294, *12. Instead, the dangerous condition— threats from acquaintances—existed before the police arrived.

In *Solum v. Yerusalim,* No. Civ. A. 98– 4056, 1999 WL 395720 (E.D.Pa. June 17, 1999), plaintiffs brought an action arising out of the death of their daughter in an automobile accident. Plaintiffs sought to recover under the state-created danger theory based upon an alleged failure to design and maintain a roadway in a safe condition. Plaintiffs claimed that the numerous accidents in the area showed deliberate indifference on the part of the defendants. The court rejected the claim, observing in language particularly apropos here:

> Plaintiffs' complaint attempts to convert a very unfortunate automobile accident into a constitutional claim. While the events complained of had tragic consequences, no defendants affirmatively created a danger within the scope of *DeShaney* and subsequent decisions. Defendants cannot be held liable for the actions of which plaintiffs complained. The solution to a situation like this is through the political not the judicial process.

*Id.* at * 6.

In this case, the danger faced by Kyle Brozusky was being dropped off on the far side of Main Street from the school building. Neither defendant required that Kyle be dropped off on that side of the street. Main Street was a two-way roadway, and there does not appear to be any reason why Kyle's grandfather could not have dropped him off on the side of the street nearest the school, where he would not have had to cross any traffic. As pointed out by Hanover Township, "even if the defendant remedied all of the alleged hazardous conditions set forth in Plaintiffs' Complaint, the same opportunity for harm existed as [the third party's] negligent driving, the minor Plaintiff's negligence, and the minor Plaintiff's grandfather's negligence would not necessarily have been affected by a change in the roadway or the surrounding conditions." (Hanover Township Brief in Supp. of Motion to Dismiss (Dkt. Entry 5) at unnumbered page 10, n. 4.) [4]

The Supreme Court has warned against expansions of liability under 42 U.S.C. § 1983 that "would trivialize the centuries-old principle of due process of law." *Dan-*

---

4. This case stands in stark contrast to those cases in which liability has been recognized. For example, in *Kneipp, supra,* law enforcement officers had stopped a visibly-inebriated woman and her husband on a cold night in January while they were walking a short distance from their home. The police allowed the husband to return home alone, but then abandoned the woman. She was found lying at the bottom of an embankment across the street from her home, unconscious. As a result of her exposure to the extreme cold, she suffered permanent brain damage. The court held that, under those circumstances, the state actors created the danger that resulted in the plaintiff's injuries. 95 F.3d at 1211. This case is more like *Morse, supra,* than *Kneipp.* In *Morse,* a psychotic killer gained entrance to a school building through an unlocked rear entrance. The court ruled that the negligent action of leaving the rear entrance unlocked may have increased the risk to the victim, but could not be said to have placed the victim in " 'a dangerous environment stripped of means to defend [herself]

*iels v. Williams,* 474 U.S. 327, 332, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Recognition of liability under the circumstances presented here would have such an unsound effect. Plaintiffs may pursue claims under state tort law, but any shortcomings in that law cannot be remedied by converting garden variety tortious conduct into the denial of substantive due process.[5] Accordingly, defendants' motion to dismiss the second Count of the separate causes of action asserted against each of them will be granted.[6]

### III. CONCLUSION

For the reasons set forth above, the defendants' motions to dismiss Counts II, III and IV of the separate causes of action asserted against each will be granted. There remains, therefore, only plaintiffs' claims of negligence under Pennsylvania law. As discovery has been stayed pending the resolution of the motions to dismiss, and this case thus remains in its early stages, exercise of supplemental jurisdiction over the state law claims will be declined. *See* 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction); *Queen City Pizza, Inc. v. Domino's Pizza, Inc.,* 124 F.3d 430, 444 (3d Cir. 1997), *cert. denied,* 523 U.S. 1059, 118 S.Ct. 1385, 140 L.Ed.2d 645 (1998); *Stehney v. Perry,* 101 F.3d 925, 939 (3d Cir.1996). Accordingly, this matter will be remanded to the Court of Common Pleas of Luzerne County.

---

and cut off from sources of aid.' " 132 F.3d at 915. The court indicated that there must be some "act or omission of the state actor that directly placed the victim in harm's way." In this case, there was no action by either Hanover Township or the School District that directly placed Kyle Brozusky in harm's way.

5. Plaintiffs argue that *Combs v. School District of Philadelphia,* No. Civ. A. 99–3812, 2000 WL 1611061 (E.D.Pa. Oct.26, 2000), is an instructive precedent that points to sustaining the state-created danger theory advanced here. In *Combs,* the plaintiff was a student who was attacked by three other students at school. The incident occurred in view of a surveillance camera, but the camera was not monitored at the time of the incident. The surveillance cameras in *Combs* had been installed because of prior incidents of violence occurring during the school day and of which school administrators were aware. By way of contrast, plaintiffs in this case have not averred that there were prior accidents outside the elementary school or that there had been prior complaints of a dangerous condition. In any event, I do not find the succinct analysis in *Combs* to be instructive. *Combs* did not consider the significance of *Collins.* Moreover, the court in *Combs* did not explain how state actors had created the dangerous condition that resulted in the assault.

6. Plaintiffs have conceded that they cannot present a viable claim for punitive damages against Hanover Township or the School District under either § 1983 or Pennsylvania law. Accordingly, defendants' motions to dismiss the fourth Counts of the separate causes of action asserted against each will be granted.